IN THE CASE OF


UNITED STATES, Appellee

v.

Gregory K. WILLIAMS, Specialist
U.S. Army, Appellant

No. 01-0010

Crim. App. No. 9601112

United States Court of Appeals for the Armed Forces

Argued May 22, 2001

Decided August 20, 2001

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and SULLIVAN, GIERKE, and BAKER, JJ., joined.


<u>Counsel</u>


For Appellant: <u>Captain John N. Maher</u> (argued); <u>Lieutenant Colonel David A.
Mayfield</u> and <u>Major Mary M. McCord</u> (on brief); <u>Captain Arun J. Thomas</u>.


For Appellee: <u>Captain Jennifer A. Parker</u> (argued); <u>Colonel David L. Hayden</u>,
<u>Lieutenant Colonel Edith M. Rob</u>, and <u>Major Anthony P. Nicastro</u> (on
brief).


Military Judge:  Linda K. Webster


**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.**

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, consistent with his pleas, of willful disobedience of a superior commissioned officer, assault consummated by a battery upon a child, and false swearing, in violation of Articles 90, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 890, 928, and 934, respectively. Contrary to his pleas, he was convicted of murder, assault consummated by a battery, and wrongful communication of a threat, in violation of Articles 118, 128, and 134, UCMJ, 10 USC §§ 918, 928, and 934, respectively. On June 20, 1996, appellant was sentenced to a dishonorable discharge, confinement for 27 years, and reduction to the lowest enlisted grade. The sentence did not include forfeiture of pay or allowances.

The convening authority reduced the period of confinement to 9 years and approved the dishonorable discharge and reduction in grade to Private E-1. In addition, he deferred automatic forfeitures under Article 58b, UCMJ, 10 USC § 858b, through July 13, 1998, the date of his action. The convening authority's action was consistent with the pretrial agreement, which (1) limited confinement to 10 years and (2) provided for deferral of automatic forfeitures through the date of the action.

On appellant's petition, we granted review of the following issues:

> I. WHETHER THE COURT-MARTIAL CONVENED BY THE COMMANDER, MILITARY DISTRICT OF WASHINGTON, DID NOT HAVE JURISDICTION OVER APPELLANT BECAUSE PRIOR TO REFERRAL ON 29 MARCH 1996, THE IDENTICAL CHARGES REFERRED AGAINST APPELLANT BY THE COMMANDER, FORT RITCHIE, ON 10 OCTOBER 1995, WERE NEVER WITHDRAWN.
>
> II. WHETHER A 745-DAY DELAY BETWEEN THE TRIAL AND THE CONVENING AUTHORITY'S ACTION VIOLATES APPELLANT'S RIGHT TO A SPEEDY REVIEW.
>
> III. WHETHER APPELLANT'S PLEAS OF GUILTY WERE IMPROVIDENT BECAUSE THE CONVENING AUTHORITY DID NOT COMPLY WITH THE TERMS OF THE PRETRIAL AGREEMENT THAT REQUIRED APPELLANT TO RECEIVE PAY AND ALLOWANCES UNTIL THE CONVENING AUTHORITY TOOK ACTION IN HIS CASE.

For the reasons set forth below, we affirm.


## I.   JURISDICTION OF THE COURT-MARTIAL

### A. Background

On October 10, 1995, Brigadier General (BG) Essig, the commanding officer of Fort Ritchie, referred appellant's case for trial under General Court-Martial Convening Order (GCMCO) No. 1.  Appellant was arraigned on October 19.  On October 26, BG Essig transmitted this case to Major General (MG) Foley, the commander of the Military District of Washington, who was BG Essig's immediate superior in the chain of command.  In the

transmittal, BG Essig noted, "I previously referred this case to trial by General Court-Martial convened by Court-Martial Convening Order Number 1, this headquarters, dated 24 February 1995."

When BG Essig retired on October 31, Lieutenant Colonel (LTC) LeFleur became the acting commander and the general court-martial convening authority at Fort Ritchie. Later that day, MG Foley withdrew LTC LeFleur's authority to convene general courts-martial and reserved it to himself. See RCM 601(b), Manual for Courts-Martial, United States (2000 ed.).[*]

After several pretrial sessions were held under Article 39(a), UCMJ, 10 USC § 839(a), MG Foley referred the case to trial under GCMCO No. 2, Headquarters, Military District of Washington. At this point, appellant had been arraigned but had not yet entered his pleas. This action reflected the recommendation of his Staff Judge Advocate (SJA), who described the action as a "re-referr[al]" of the charges. The SJA provided MG Foley with the same pretrial advice he provided to BG Essig prior to the first referral under Article 34, UCMJ, 10 USC § 834. The charges were identical to those in the first referral, except for some minor pen-and-ink changes. The second

---

[*] All Manual provisions are cited to the current version, which are identical to the ones in effect at the time of appellant's court-martial.

referral did not expressly withdraw the charges referred under GCMCO No. 1.

Subsequently, defense counsel moved to dismiss the charges, contending that the court-martial lacked jurisdiction because MG Foley never properly withdrew the initially referred charges. The military judge determined that MG Foley acted as BG Essig's successor convening authority, that the referral under GCMCO No. 2 was an implicit withdrawal of the charges referred under GCMCO No. 1, and that the re-referral was motivated by the need to add new members because so many had transferred since the original referral. Based on these findings, the military judge concluded that the withdrawal and re-referral of charges was proper and denied the motion.

## B. Discussion

When charges are referred to a court-martial, that court retains jurisdiction over the case from the point of referral through authentication of the record by the military judge, except when the convening authority withdraws the charges from the court-martial under RCM 604(a). See United States v. Seward, 49 MJ 369, 372 (1998). Unless the charges are withdrawn for an "improper reason," the convening authority may re-refer the withdrawn charges to a different court-martial. See RCM 604(b).

5

In the present case, when BG Essig retired and MG Foley withdrew the general court-martial convening authority from LTC LeFleur and reserved it to himself, MG Foley thereafter acted as a successor convening authority. In that capacity, he had ample authority to withdraw the charges referred under GCMCO No. 1 and to re-refer them under GCMCO No. 2.

Appellant does not contest MG Foley's authority to take such actions, nor does he contend that the charges were withdrawn for an improper reason. Appellant contends that the convening authority did not withdraw and re-refer the charges as a matter of fact and law. Appellant notes that no document expressly reflects MG Foley's intent to withdraw the charges referred under GCMCO No. 1. Appellant also observes that trial counsel stated early in the proceedings that MG Foley "let stand" the initial referral and that an "amending order to GCMCO 1" would be forthcoming. Appellant further contends that the mere act of re-referral under GCMCO No. 2 cannot be read to imply an intent to withdraw. He argues that withdrawal and referral under RCM 604 and 601 are separate and distinct acts that cannot be merged into a singular act by implication.

We agree that withdrawal and re-referral of charges are separate acts. Not every charge that is withdrawn inevitably is re-referred. These functions, however, are closely related, and it is reasonable to presume that re-referral of a charge by a

proper convening authority implies a decision to withdraw that charge from a prior referral. Although it is preferable for a convening authority to indicate this intent expressly, RCM 604 does not require that the convening authority memorialize this decision in any particular form.

Although trial counsel mentioned earlier in the proceedings that the convening authority "let stand" the initial referral, trial counsel later made it clear that the Government viewed the convening authority's actions as involving withdrawal and re-referral of the charges. The question before us is whether the circumstances reasonably reflect an intent to withdraw the charges referred under GCMCO No. 1 and re-refer them under GCMCO No. 2. At the time MG Foley re-referred these charges under GCMCO No. 2, he had reserved to himself the full legal authority to act as the general court-martial convening authority in this and other cases at Fort Ritchie. In recommending referral under GCMCO No. 2, MG Foley's SJA specifically referred to the action as a "re-referr[al]," and he even used the same pretrial advice used by BG Essig's SJA prior to the initial referral under GCMCO No. 1.

Under the circumstances of this case, MG Foley's intent to withdraw the charges referred under GCMCO No. 1 was implicit in his re-referral of those charges under GCMCO No. 2. Any administrative deficiency in memorializing this process was

insubstantial and did not deprive the court-martial of jurisdiction. See United States v. Stinson, 34 MJ 233 (CMA 1992); United States v. Fricke, 53 MJ 149 (2000); United States v. Blaylock, 15 MJ 190 (CMA 1983); United States v. Jette, 25 MJ 16 (CMA 1987); RCM 601(a), Discussion; RCM 601(e)(1).

## II.  POST-TRIAL DELAY

Appellant's court-martial ended with his sentencing on June 20, 1996.  The convening authority did not take action on this record until July 13, 1998 -- 753 days after completion of trial, largely as a result of government errors, omissions, and inattention.

Appellant has a right to a speedy post-trial review of his case.  United States v. Hudson, 46 MJ 226, 227 (1997).  The length of the delay in this case -- over 2 years -- reflects poorly on the administration of military justice.  Under our precedents, however, an unreasonable delay in the post-trial review process will be tested for prejudice.  United States v. Banks, 7 MJ 92, 94 (CMA 1979).  Delay "will not be tolerated if there is any indication that appellant was prejudiced as a result."  United States v. Shely, 16 MJ 431, 433 (CMA 1983).

Appellant contends that he was prejudiced by the delay because he was denied post-trial pay and allowances that were contemplated under the pretrial agreement.  Our disposition of

8

his claim of prejudice is governed by our resolution of Issue

III, which is considered in the following section of this

opinion.

III.  PRETRIAL AGREEMENT REGARDING POST-TRIAL PAY AND ALLOWANCES

A.  Factual Background

The pretrial agreement between appellant and the convening

authority included the following provisions:

> b.  within thirteen days after sentence is
> announced, [the convening authority will]
> defer execution of all forfeitures of pay
> and allowances until action is taken on the
> case, and
> c.  waive all forfeitures of pay and
> allowances for a period of six months and
> direct payment of those funds to Michael and
> Marcus Williams [(appellant's children)] in
> equal shares[.]

The military judge conducted a post-sentencing inquiry into the

pretrial agreement and appellant's understanding of it.  See RCM

910(h)(3); United States v. Green, 1 MJ 453, 456 (CMA 1976).  In

the course of that inquiry, there was a brief colloquy

concerning the foregoing provisions:

> [MJ:]  [I]n this case I did not adjudge
> forfeiture of pay and allowances, therefore,
> you get the benefit of that, if you will, in
> that there are no forfeitures adjudged in
> this case whatsoever.
> Now, I will leave it to your counsel to
> explain in more detail to you how the lack
> of total forfeitures in this case. . . will
> affect what happens to your pay upon ETS
> date [(expiration of term of service)] and

9

the operation of any other provisions of law that will come into play while you serve your confinement.

Captain Robbins, Captain Ashley, I would understand that you would take that direction from me and discuss that in more detail with him as far as the different permutations that can apply, since I did not adjudge any total forfeitures in this case.

DC (CPT Robbins): Yes, ma'am. We have done so, anticipating how you ever might have come out, and we will do so again.

MJ: All right. Thank you.

DC (CPT Robbins): Yes, ma'am.

Shortly thereafter, when the military judge asked whether counsel agreed with her interpretation of the pretrial agreement, defense counsel stated: "Again, Your Honor, paragraphs B and C will have effect on the provisions of Article 58 of the code, but has no effect on your adjudged sentence because you did not adjudge forfeitures."

Appellant was sentenced on June 20, 1996. On July 19, the convening authority retroactively deferred automatic forfeiture of pay and allowances beginning on July 3, the date they otherwise would have taken effect. Appellant's term of enlistment ended in February 1997, 7 months after the conclusion of trial, after which he received no pay and allowances. Sixteen months later, in June 1998, appellant provided the convening authority with a post-trial submission under RCM 1105, which included a contention that he was denied the benefit of

10

his pretrial agreement by virtue of his pay and allowances ending with the expiration of his service in February 1997. As noted at the outset of this opinion, the convening authority reduced the amount of confinement but provided no monetary relief when he took action on July 13, 1998.

## B. Discussion

If an accused does not receive the benefit of the bargain reflected in a negotiated pretrial agreement, the pleas will be treated as improvident, the findings will be set aside, and the accused will be subject to retrial. United States v. Mitchell, 50 MJ 79, 82 (1999). Appellant contends that he bargained for financial security for his family by ensuring that they would receive his full pay and allowances from the date of sentencing until 6 months after the convening authority's action. In light of the delay in that action, discussed earlier, appellant asserts that his full pay and allowances should have continued until January 13, 1999, rather than terminating in February 1997 with the expiration of his term of service.

Appellant relies on United States v. Williams, 53 MJ 293 (2000), and United States v. Hardcastle, 53 MJ 299 (2000), for the proposition that there was a misunderstanding among all parties as to the Government's legal ability to comply with the

11

agreement during the period beyond his ETS, which rendered his guilty pleas improvident.

Williams involved a pretrial agreement that included a 6-month waiver of automatic forfeitures under Article 58b. During the providence inquiry, the military judge advised the accused that the convening authority had agreed to a 6-month waiver of automatic forfeitures for the benefit of his dependents. Both counsel indicated on the record their agreement with the military judge's understanding of this provision. No one at trial realized that because the accused was on legal hold beyond the expiration of his obligated service, his right to pay and allowances would be terminated immediately upon conviction under applicable Department of Defense regulations.

On appeal in Williams, the Government conceded that the plea was improvident as a result of a mutual misunderstanding among the parties and the military judge as to the legal ability of the Government to comply with a key provision of the pretrial agreement. The Government also agreed that even if the provision in question was collateral, the misunderstanding still entitled the accused to rescind the agreement under United States v. Bedania, 12 MJ 373, 376 (CMA 1982), which held that

> when collateral consequences of a court-martial conviction -- such as administrative discharge, loss of a license or a security clearance, removal from a military program, failure to obtain promotion, deportation, or

12

> public derision and humiliation -- are
> relied upon as the basis for contesting the
> providence of a guilty plea, the appellant
> is entitled to succeed only when the
> collateral consequences are major and the
> appellant's misunderstanding of the
> consequences (a) results foreseeably and
> almost inexorably from the language of a
> pretrial agreement; (b) is induced by the
> trial judge's comments during the providence
> inquiry; or (c) is made readily apparent to
> the judge, who nonetheless fails to correct
> that misunderstanding. In short, chief
> reliance must be placed on defense counsel
> to inform an accused about the collateral
> consequences of a court-martial conviction
> and to ascertain his willingness to accept
> those consequences.

(Emphasis omitted.)

We accepted the concessions from the Government in Williams, as well as in Hardcastle, supra. In Hardcastle, we distinguished United States v. Albert, 30 MJ 331 (CMA 1990), "where there was no representation by the convening authority, trial counsel, or the military judge as to post-trial entitlement to pay and the automatic forfeiture provisions of Article 58b . . . were not involved." 53 MJ at 303.

In the present case, appellant bargained for two protections in his pretrial agreement: (1) a limitation on confinement and (2) a delay in the impact of potentially applicable forfeitures of pay and allowances. At the time he entered into this agreement, he did not know whether the military judge would adjudge forfeitures, and he did not know

13

whether the convening authority would defer the automatic forfeitures under Article 58b. Moreover, he did not know that a subsequent decision would preclude application of automatic forfeitures in cases arising prior to enactment of Article 58b. See United States v. Gorski, 47 MJ 370 (1997).

Because he could not be assured at the time of trial of protection against adjudged or automatic forfeitures, he sought in the pretrial agreement to protect his family against potential forfeitures. Appellant received what he bargained for in this regard. The adjudged sentence did not include any forfeitures and there is no evidence that his pay was subjected to automatic forfeitures.

Appellant's complaint is based on the termination of his pay and allowances occasioned by the end of his term of service in February 1997. The inquiry at trial, however, made it clear that the pretrial agreement merely restricted application of adjudged or automatic forfeitures if applicable. The agreement did not purport to guarantee continuation of pay and allowances under other circumstances, and the plea inquiry did not indicate that the parties contemplated any such guarantee. The military judge expressly noted the potential impact of appellant's ETS on the continuation of his pay while in confinement, and she was assured by defense counsel that they already had discussed this matter in detail with appellant and that they would do so again.

See Bedania, supra at 376.  Under these circumstances, in which there was no representation as to entitlement of pay beyond his ETS, by the convening authority in the pretrial agreement or by trial counsel or the military judge during the trial, this case is distinguishable from Williams and Hardcastle.

## IV.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.