UNITED STATES, Appellee

V.

Sean M. TARDIF, Food Service Specialist Third Class
U.S. Coast Guard, Appellant

No. 01-0520

Crim. App. No. 1141

_____

United States Court of Appeals for the Armed Forces

Argued November 27, 2001

Decided August 30, 2002

GIERKE, J., delivered the opinion of the Court, in which
EFFRON and BAKER, JJ., joined. CRAWFORD, C.J., and SULLIVAN,
S.J., each filed a dissenting opinion.

Counsel

For Appellant: Commander Jeffrey C. Good (argued and on brief).

For Appellee: Lieutenent Daniel J. Goettle (argued and on
    brief); Commander Chris P. Reilly.

Amicus Curiae: Colonel Steven T. Salata, Lieutenant Colonel
    Denise R. Lind, Major Margaret B. Baines, and Captain Karen
    J. Borgerding (on brief) – For the U.S. Army Government
    Appellate Division.

Military Judge: Robert Bruce

**This opinion is subject to editorial correction before final publication**.

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of a 12-day unauthorized absence and assault on a child under the age of sixteen years (two specifications), in violation of Articles 86 and 128, Uniform Code of Military Justice (UCMJ), 10 USC §§ 886 and 928, respectively. The adjudged sentence provides for a dishonorable discharge, confinement for three years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority reduced the confinement to 24 months but otherwise approved the sentence.

The Court of Criminal Appeals set aside the conviction of unauthorized absence and reassessed and affirmed the sentence. 55 MJ 666 (2001). On reconsideration, the court below granted appellant 12 days of confinement credit under United States v. Allen, 17 MJ 126 (CMA 1984). 54 MJ 954 and 55 MJ 670 (2001).

This Court granted review of the following issue:

> WHETHER THE COAST GUARD COURT OF CRIMINAL APPEALS ERRED IN
> CONCLUDING THAT APPELLANT HAD NOT BEEN PREJUDICED BY
> EXCESSIVE POST-TRIAL DELAY WHERE THE COURT BELOW CONCLUDED
> THAT THE DELAY WAS BOTH "UNEXPLAINED AND UNREASONABLE" AND
> "CASTS A SHADOW OF UNFAIRNESS OVER OUR MILITARY JUSTICE
> SYSTEM."

For the reasons set out below, we hold that a Court of Criminal Appeals has authority under Article 66(c), UCMJ, 10 USC § 866(c), to grant appropriate relief for unreasonable and unexplained post-trial delays. We further hold that this authority under Article 66(c) is distinct from the court's authority under Article 59(a), UCMJ, 10 USC § 859(a), to overturn a finding or sentence "on the ground of an error of law[.]"

2

Finally, we hold that the court's authority to grant relief under Article 66(c) does not require a predicate holding under Article 59(a) that "the error materially prejudices the substantial rights of the accused."  Because the court below considered itself constrained from granting relief by Article 59(a) and did not consider the impact of the post-trial delays in its review under Article 66(c), we remand the case for further consideration.

Appellate History

The chronology of post-trial events in appellant's case is as follows:

| DATE | ACTION | DAYS ELAPSED |
|------|--------|--------------|
| October 29, 1999 | Appellant sentenced | 0 |
| October 29, 1999 | Confinement deferred | 0 |
| November 5, 1999 | Deferment ends | 7 days |
| December 21, 1999 | Military Judge receives record of trial | 53 days |
| February 7, 2000 | Record authenticated | 101 days |
| March 23, 2000 | Record served on Defense Counsel (DC) | 145 Days |
| April 10, 2000 | Recommendation of Staff Judge Advocate (SJA) prepared[1] | 163 days |
| May 15, 2000 | DC responds to SJA recommendation | 198 days |
| June 9, 2000 | Convening Authority's action | 223 days |
| Oct 2, 2000 | Record forwarded to Headquarters, U.S. Coast Guard | 338 days |
| November 1, 2000 | Record received at Coast Guard Headquarters | 368 days |
| November 17, 2000 | Record referred to Coast Guard Court of Criminal Appeals | 384 days |

---

[1] The record does not reflect the date on which the SJA's recommendation was served on defense counsel.

The court below focused on the 115 days that elapsed after the convening authority's action and before the record was forwarded to Coast Guard Headquarters. Concluding that the delay was "unexplained and unreasonable," and that it "casts a shadow of unfairness over our military justice system," the court nevertheless held that it was without authority to grant relief. Citing this Court's decisions in United States v. Hudson, 46 MJ 226 (1997), United States v. Jenkins, 38 MJ 287 (CMA 1993), and United States v. Banks, 7 MJ 92 (CMA 1979), the court below concluded that "an appellant must show that the delay, no matter how extensive or unreasonable, prejudiced his substantial rights." 55 MJ at 668. Chief Judge Baum dissented from the decision to not grant relief for the excessive delay in forwarding the case to the Court of Criminal Appeals. In Chief Judge Baum's view, no more than 21 months of confinement should have been approved. Id. at 669.

Before this Court, appellant argued that the court below applied the wrong standard of review by focusing on Article 59(a) instead of Article 66(c). Appellant requested that his case be remanded to the court below for consideration under Article 66(c), with instructions that unexplained and unreasonable post-trial delay is an appropriate factor for that court to consider in determining what sentence "should be approved," regardless of whether appellant has established legal prejudice.

The Government asserted that appellant was not harmed by the delay, and that it would be a windfall for appellant if he were granted sentence relief without showing that he has been harmed. The Government conceded, however, that if an appellant has

4

suffered "harm" falling short of "prejudice" within the meaning of Article 59(a), a Court of Criminal Appeals may grant appropriate relief through its review of sentence appropriateness under Article 66(c).

The U.S. Army Government Appellate Division, as amicus curiae, urged this Court to hold that a Court of Criminal Appeals must be convinced that there was material prejudice to a substantial right under Article 59(a) before it grants relief for unreasonable post-trial delay. It further urged this Court to hold that, if a Court of Criminal Appeals concludes there has been material prejudice to an appellant's substantial rights, it may fashion appropriate relief under Article 66(c), without setting aside the findings and sentence.

In contrast to the Coast Guard court's decision in this case, the Army Court of Criminal Appeals has held that its "broad power to moot claims of prejudice" under Article 66(c) empowers it to grant relief for excessive delays in the absence of a showing of "actual prejudice." United States v. Collazo, 53 MJ 721, 727 (Army Ct.Crim.App. 2000), quoting United States v. Wheelus, 49 MJ 283, 288 (1998). The Army court noted:

> [F]undamental fairness dictates that the government
> proceed with due diligence to execute a soldier's
> regulatory and statutory post-trial processing rights
> and to secure the convening authority's action as
> expeditiously as possible, given the totality of the
> circumstances in that soldier's case.

The Army court held, "That did not happen in [this] case." Id.

In so holding, the Army court in Collazo noted that the appellant had "not demonstrated actual prejudice under Banks."

However, the Army court emphasized the importance of other factors, such as

> [t]he infringement of appellant's statutory rights under Articles 38 and 54, UCMJ, [10 USC §§ 838 and 854,] the denial of the opportunity to review the record prior to authentication as required by RCM 1103, [Manual for Courts-Martial, United States (2000 ed.),] the failure to provide a complete copy of the record of trial (to include the allied papers) for use in preparation of RCM 1105 matters, and the unacceptable 10-month delay in preparing the record of trial[.]

These circumstances, the court concluded, "warrant relief" in the course of the court's exercise of its responsibility under Article 66(c) to affirm only "such part or amount of the sentence, as it . . . determines, on the basis of the entire record, should be approved." Id., quoting Article 66(c).

## Discussion

### 1. Legal Context

A brief legal history is necessary to place the granted issue in context. This Court has long recognized that an accused has a right to timely review of the findings and sentence. See United States v. Tucker, 9 USCMA 587, 589, 26 CMR 367, 369 (1958) ("Unexplained delays . . . [in appellate processes] should not be tolerated by the services, and they will not be countenanced by this Court.").

In United States v. Burton, 21 USCMA 112, 44 CMR 166 (1971), the appellant asked this Court to set aside his conviction and sentence and dismiss the charges, on the ground that he had been denied his right to a speedy trial, in violation of Article 10, UCMJ, 10 USC § 810. This Court established a presumption of an Article 10 violation whenever an accused is held in pretrial confinement for more than three months. Under the Burton rule,

6

there was a "heavy burden on the Government to show diligence, and in the absence of such a showing the charges [would] be dismissed."  Id. at 118, 44 CMR at 172.

In Dunlap v. Convening Authority, 23 USCMA 135, 48 CMR 751 (1974), this Court considered a petition for extraordinary relief filed by a petitioner who remained in confinement at the United States Disciplinary Barracks for 11 months after his conviction was set aside, awaiting a convening authority's decision whether to order a rehearing or dismiss the charges.  This Court concluded that the same considerations underlying the Burton rule for pretrial delays should be applied to post-trial delays.  Thus, this Court held that "a presumption of a denial of speedy disposition of the case will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of trial."  Id. at 138, 48 CMR at 174.  Like the Burton rule, the Dunlap rule placed a "heavy burden on the Government to show diligence, and in the absence of such a showing the charges [would] be dismissed."  Id.

In Banks, supra, the Judge Advocate General of the Army certified an issue challenging the correctness of the lower court's decision to set aside a conviction and sentence for violation of the Dunlap rule by one day.  This Court upheld the lower court's decision but announced a prospective abandonment of the Dunlap rule and a return to the rule requiring a showing of

prejudice.   7 MJ at 93-94.[2]   Although Banks abrogated the draconian remedy imposed by Dunlap, this Court has not wavered in its recognition of the right to timely post-trial review.  See United States v. Williams, 55 MJ 302, 305 (2001) ("Appellant has a right to a speedy post-trial review of his case.").

In Hudson, 46 MJ at 227, Jenkins, 38 MJ at 288, and Williams, supra, this Court again considered requests to dismiss the charges for delays in post-trial processing.  In all these cases, this Court declined to dismiss the charges, either citing or relying on Article 59(a).

In Banks, Hudson, Jenkins, and Williams, this Court was asked to exercise its own authority under Article 67, UCMJ, 10 USC § 867, and to dismiss the charges for unreasonable and unexplained delays in post-trial processing.  None of these decisions involved the authority of the Courts of Criminal Appeals and their predecessors to grant relief under Article 66(c), and none of these decisions involved the question whether the Courts of Criminal Appeals and their predecessors had authority to grant relief short of dismissal of the charges.  The pleadings in this case present two issues:

(1) Whether a Court of Criminal Appeals has authority under Article 66(c) to grant relief for excessive post-trial delay, whether or not the delay has "materially prejudiced [the appellant's] substantial rights"; and

(2) Whether a Court of Criminal Appeals has authority to grant relief short of dismissal of the charges  if it concludes that there has been excessive post-trial delay.

---

[2] In United States v. Kossman, 38 MJ 258, 262 (CMA 1993), this Court also abrogated the Burton rule and returned to a "reasonable diligence" test.

These issues involve interpretation of Articles 59(a) and 66(c),
and thus they present issues of law, which we review de novo.

### 2.  Authority of Courts of Criminal Appeals

Unlike our Court's limited authority to review sentences
under Article 67, a Court of Criminal Appeals has broad authority
under Article 66(c) to review and modify sentences.  Article
66(c) provides in pertinent part as follows:

> [The Court of Criminal Appeals] may affirm only such
> findings of guilty and the sentence or such part or
> amount of the sentence, as it finds correct in law and
> fact and determines, on the basis of the entire record,
> should be approved.

The legislative history of Article 66 reflects congressional
intent to vest broad power in the Courts of Criminal Appeals.
The legislative history also reflects a congressional distinction
between review of the lawfulness of a sentence and its
appropriateness.  See S. Rep. No. 98-486, at 28 (1949) ("The
Board may set aside, on the basis of the record, any part of a
sentence, either because it is illegal or because it is
inappropriate.").  Professor Morgan, chair of the drafting
committee for the UCMJ, testified as follows about the power of
the Boards of Review, the predecessors of the Courts of Criminal
Appeals:

> [T]he board of review, now, has very extensive powers.
> It may review law, facts, and practically, sentences;
> because the provisions stipulate that the board of
> review shall affirm only so much of the sentence as it
> finds to be justified by the whole record.  It gives
> the board of review . . . the power to review facts,
> law and sentence . . . .

Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the Senate
Comm. on Armed Services, 81st Cong., at 42 (1949).

In Jackson v. Taylor, 353 U.S. 569, 576-77 (1957), the Supreme Court reviewed the legislative history of Article 66, and it concluded that Congress intended the Boards of Review to affirm only so much of the sentence as they found to be "justified by the whole record," and to set aside all or part of a sentence, "either because it is illegal or because it is inappropriate." Our Court likewise has concluded that the predecessors of the Courts of Criminal Appeals had the power and responsibility to, "in the interests of justice, substantially lessen the rigor of a legal sentence." United States v. Lanford, 6 USCMA 371, 378, 20 CMR 87, 94 (1955).

Our Court has consistently recognized the broad power of the Courts of Criminal Appeals to protect an accused. See United States v. Parker, 36 MJ 269, 271 (CMA 1993). We have consistently recognized that the charter of Courts of Criminal Appeals on sentence review is to "do justice." United States v. Claxton, 32 MJ 159, 162 (CMA 1991); United States v. Healy, 26 MJ 394, 395-96 (CMA 1988). Finally, we have consistently recognized the "broad power" of a Court of Criminal Appeals "to moot claims of prejudice by 'affirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Wheelus, 49 MJ at 288, quoting Art. 66(c); see also United States v. Higbie, 12 USCMA 298, 30 CMR 298 (1961) (recognizing power of Board of Review to reduce sentence in order to moot issue whether convening authority considered a dismissed charge and specification in his review of the adjudged sentence).

However, the power of the Courts of Criminal Appeals is not without limits. Article 59(a) provides: "A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a) was intended by Congress to preclude reversals for minor technical errors. See United States v. Powell, 49 MJ 460, 462 (1998). In accordance with Article 67, this Court reviews the sentencing decisions of the Courts of Criminal Appeals for "obvious miscarriages of justice or abuses of discretion." See United States v. Jones, 39 MJ 315, 317 (CMA 1994).

Based on the legislative and judicial history of Articles 59(a) and 66(c), we conclude that the power and duty of a Court of Criminal Appeals to review sentence appropriateness under Article 66(c) is separate and distinct from its power and duty to review a sentence for legality under Article 59(a). Considered together, Articles 59(a) and 66(c) "bracket" the authority of a Court of Criminal Appeals. Article 59(a) constrains the authority to reverse "on the ground of an error of law." Article 66(c) is a broader, three-pronged constraint on the court's authority to affirm. Before it may affirm, the court must be satisfied that the findings and sentence are (1) "correct in law," and (2) "correct in fact." Even if these first two prongs are satisfied, the court may affirm only so much of the findings and sentence as it "determines, on the basis of the entire record, should be approved." See Powell, supra at 464-65. The first prong pertains to errors of law and, as such, it also implicates Article 59(a). The second and third prongs do not

11

involve errors of law and, thus, do not implicate Article 59(a). Based on this statutory analysis, we agree with the Army court's conclusion in Collazo that a Court of Criminal Appeals has authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of "actual prejudice" within the meaning of Article 59(a), if it deems relief appropriate under the circumstances. 53 MJ at 727.

Thus, we hold that, in addition to its determination that no legal error occurred within the meaning of Article 59(a), the court below was required to determine what findings and sentence "should be approved," based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay. Accordingly, we conclude that a remand is necessary so that the court below can exercise its broad authority under Article 66(c) to determine whether relief is warranted and, if so, what relief should be granted.

### 3. Remedies for Excessive Post-Trial Delay

The argument of amicus curiae raises the additional issue whether a Court of Criminal Appeals has authority to grant relief short of dismissal of the charges if it finds excessive post-trial delay. This argument reflects the longstanding concern of our Court and the Courts of Criminal Appeals about the draconian remedy required by Dunlap and its progeny for excessive post-trial delay. See Hudson, 46 MJ at 227 ("[W]e are loath to declare that valid trial proceedings are invalid solely because of delays in the criminal process after the trial."); United States v. Clevidence, 14 MJ 17, 21 (CMA 1982) (Cook, J., dissenting) (dismissing charges is "burning the barn to kill the

rats"); Banks, 7 MJ at 93 ("The certified question expresses the frustration of the services over the inflexibility of the Dunlap rule."); Dunlap, 23 USCMA at 141, 48 CMR at 757 (Duncan, C.J., dissenting) ("What the Court does today is provide a means where a person found guilty beyond a reasonable doubt in an error-free hearing may escape any sanction."); see also Department of the Army Pamphlet 27-50-336, The Army Lawyer, Criminal Law Note: United States v. Collazo: The Army Court of Criminal Appeals Puts Steel on the Target of Post-Trial Delay, at 37-38 (November 2000) (Army Court of Criminal Appeals "left with the options of finding prejudice and letting a rapist go free, or finding no prejudice and ratifying the sloppy administration of justice.").

Before this Court decided Dunlap, denial of the right to speedy trial resulted in dismissal of the charges only if reversible trial errors occurred and it was impossible to cure those errors at a rehearing because of the excessive post-trial delay.  See United States v. Timmons, 22 USCMA 226, 227, 46 CMR 226, 227 (1973), and cases cited therein.  In Timmons, this Court noted that the court below had purged the effect of a trial error by modifying the findings, making dismissal of the charges unwarranted.  In United States v. Gray, 22 USCMA 443, 445, 47 CMR 484, 486 (1973), this Court repeated this principle:

> [B]efore ordering a dismissal of the charges because of
> post-trial delay there must be some error in the
> proceedings which requires that a rehearing be held and
> that because of the delay appellant would be either
> prejudiced in the presentation of his case at a
> rehearing or that no useful purpose would otherwise be
> served by continuing the proceedings.

Although Dunlap is regarded as a post-trial delay case, the delay in that case actually involved the decision whether to

13

order a rehearing.  See 23 USCMA at 136, 48 CMR at 752.  Assuming without deciding that Article 10 applies only to proceedings through trial, this Court stated, "[T]he failure of the Uniform Code or the Manual for Courts-Martial to condemn directly unreasonable delay by the convening authority in acting on the record of trial does not mean that relief against such delay is unobtainable."  This Court then decided that it was "appropriate" that the presumption of prejudice adopted for pretrial delays in Burton be applied to post-trial delays, along with the sanction of dismissing the charges whenever the presumption of prejudice was not overcome.  Id. at 138, 48 CMR at 754.

In United States v. Becker, 53 MJ 229, 232 (2000), this Court provided the following guidance concerning remedies for "speedy trial" violations in the context of sentence rehearings: "[T]he remedy should be tailored to the harm suffered, such as an appropriate sentence credit or, in a case where the delay has interfered with the defense's ability to receive a fair hearing, a sentence to no punishment at all."

We conclude that the Dunlap "all-or-nothing" remedy for post-trial delays was laid to rest in Banks.  We further conclude that appellate courts are not limited to either tolerating the intolerable or giving an appellant a windfall.  The Courts of Criminal Appeals have authority under Article 66(c) to apply the Timmons approach, recently repeated in Becker, to post-trial delays, and to tailor an appropriate remedy, if any is warranted, to the circumstances of the case.

Finally, we note that counsel at the trial level are particularly well-situated to protect the interests of their

clients by addressing post-trial delay issues before action by the convening authority. Trial counsel can ensure that the record contains an explanation for what otherwise might appear to be an unreasonable delay. Defense counsel can protect the interests of the accused through complaints to the military judge before authentication or to the convening authority after authentication and before action. After the convening authority's action, extraordinary writs may be appropriate in some circumstances. Appellate relief under Article 66(c) should be viewed as the last recourse to vindicate, where appropriate, an appellant's right to timely post-trial processing and appellate review.

## Decision

The decision of the United States Coast Guard Court of Criminal Appeals is set aside. The record of trial is returned to the General Counsel of the Department of Transportation for remand to the Court of Criminal Appeals for reconsideration in light of this opinion. Thereafter, Article 67 will apply.

United States v. Tardif, No. 01-0520/CG

CRAWFORD, Chief Judge (dissenting):

The majority interprets Articles 66(c) and 59(a) in a manner that is contrary to the principles of statutory construction and legislative intent, as well as inconsistent with 50 years of established practice and case law.  In so doing, the majority offers an incomplete recitation of the legislative history of Articles 66(c) and 59(a) and ignores the practical effects of its decision.  The majority's misreading of Article 59 should not be further exacerbated.  Unless there has been a substantial violation of an appellant's rights, the Courts of Criminal Appeals may not use their supervisory authority to grant further relief to the appellant.  United States v. Hasting, 461 U.S. 499, 505 (1983).  Instead, this Court should encourage corrective action by those responsible for post-trial delays.  Id. at 506 n.5.  Because the majority is engaging in broad judicial rulemaking[1] by amending the Code to expand Article 66(c) and contract Article 59(a), and thereby essentially creating a power of equity in the court below, I must respectfully dissent.

The objectives of the majority and the Army Court of Criminal Appeals in United States v. Collazo, 53 MJ 721 (Army Ct. Crim. App. 2000), are well intentioned but lack a

---

[1] See United v. Key, No. 01-0646, ___ MJ ___ n.* (2002)(Crawford, C.J., concurring in the result).

doctrinal basis.  I wholeheartedly endorse the goal of preventing unexplained or unreasonable post-trial delays, but believe there is a better means of achieving this end without violating the doctrine of separation of powers and principles established for judicial bodies.

The starting point for interpreting a statute is, of course, the plain meaning of that statute.  In addition, there are a number of factors that provide a framework for engaging in statutory interpretation.  These include the contemporaneous history of the statute; the contemporaneous interpretation of the statute; and subsequent legislative action or inaction regarding the statute.  These factors provide a background of the existing customs, practices, and rights and obligations against which to read the statute.  Applying these principles of statutory interpretation to Articles 66(c) and 59(a) yields a different result from that reached by the majority.

Article 66(c) provides as follows:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority.  It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.  In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

Additionally, Article 59(a) provides:

> A finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused.

Contemporaneous History. Article 66(c) provides that the Court of Criminal Appeals "may affirm only ... the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

By establishing the intermediate appellate courts, Congress intended to eliminate command influence, such as a commander sending an acquittal back to a court-martial for reconsideration. Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., at 608 (1949)(the "Hearings"). The courts of review could examine not only questions of law, but questions of fact, to preclude command influence. Id. Additionally, Article 66 was intended to grant the Courts of Criminal Appeals discretionary power to modify sentences. These courts would ensure that there was a uniform Code because they would examine courts-martial sentences from throughout the world. The Hearings emphasized, "It is contemplated that this power [under Articles 66 and 59] will be exercised to establish uniformity of sentences throughout the armed forces." Id. at 1187.

3

This is reinforced by Professor Morgan's commentary to Article 66, which provides:

> The Board of Review shall affirm a finding of guilty of an offense or a lesser included offense (see Article 59) if it determines that the finding conforms to the weight of the evidence and that there has been no error of law which materially prejudices the substantial rights of the accused.  See Article 59, Commentary.  The Board may set aside, on the basis of the record, any part of a sentence, either because it is illegal or because it is inappropriate.  It is contemplated that this power will be exercised to establish uniformity of sentences throughout the armed forces.  See Article 67(g).

Uniform Code of Military Justice:  Text, References and Commentary based on the Report of the Committee on a Uniform Code of Military Justice to the Secretary of Defense, at 94 (1950).

The plain meaning of Article 66 is that the Court of Criminal Appeals may "affirm only ... findings and sentences" based on the "entire record."  We have interpreted this statute to allow Courts of Criminal Appeals, based on the entire record of trial, to modify or dismiss charges based on a lack of factual sufficiency, as well as reassess sentences found to be inappropriate.  But we have not allowed these courts to go outside the record, for example, by considering two nonjudicial punishments that were inadmissible at trial.  See United States v. Redhouse, 53 MJ 246 (2000)(summary disposition).  Nor have we allowed the Courts of Criminal Appeals to grant suspension of

the punishment.  See, e.g., United States v. Darville, 5 MJ 1 (CMA 1978).

Additionally, the plain meaning of the statute in the context of its enactment in 1950 does not support the majority's position.  When Congress wanted to grant discretionary power unrelated to Article 59, it knew how to do so.  See Art. 60(c)(2), UCMJ, 10 USC § 860(c)(2)(in acting on the findings or sentence, "convening authority ..., in his [or her] sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part"); see also Art. 60(c)(3)(A) (convening authority may act "in his [or her] sole discretion" in dismissing the charges or specifications).

Authority was not granted to the Courts of Criminal Appeals to grant windfalls unrelated to Article 59 or act in their "sole discretion."  While the authority of the courts below has been commented on by referring to them as the "proverbial 800-pound gorilla," they may not act on their own whim.  United States v. Parker, 36 MJ 269, 273 (CMA 1993)(Wiss, J., concurring).  We have not granted these courts power under Article 66(c) to resolve post-trial claims of ineffective assistance of counsel by making findings of fact based on conflicting affidavits from the parties.  See, e.g., United States v. Ginn, 47 MJ 236 (1997).  Based upon the plain language of the statute and the legislative history, it is improbable that if Congress was

5

asked, it would grant the authority to the Courts of Criminal Appeals to reduce sentences because of post-trial delay, even though an appellant was not prejudiced.

Contemporaneous Interpretation. In interpreting Articles 66(c) and 59(a), we should examine their construction for the last 50 years by this Court and intermediate service appellate courts. None has reached the conclusion reached by the Army court in Collazo. Additionally, there has been no change to the statutes that might precipitate a statutory reinterpretation. The fact that this remedy has not been previously proposed is good evidence that such was not the intent of Congress.

Legislative Action or Inaction. If Congress wanted to establish the remedy which the majority sanctions, it would have done so at the time of the UCMJ's enactment, or at any subsequent time that it became dissatisfied with decisions from the courts concerning post-trial delays. Numerous changes to the UCMJ have been enacted by Congress over the last 50 years, many in response to various judicial decisions. No changes have been forthcoming regarding the impact of post-trial delays. The majority's interpretation simply does not relate to the statutory objectives sought by Congress.

Practical Effects. There are practical reasons for not giving this authority to the lower courts. Contrary to the majority's assertion, final authority will not rest with the

Courts of Criminal Appeals.  Final review by this Court will be required to determine whether the lower courts abused their discretion.  Neither the courts below nor this Court should be placed in the position of determining what constitutes a request for a delay, what circumstances justify delay, what constitutes extraordinary circumstances, and so forth.  We do not have the flexibility or ability to gather facts that the President and his advisors have in exercising their rulemaking authority.  Article 36, UCMJ, 10 USC § 836, is a clear grant of authority to the President to formulate these procedural rules.  We should not be flirting with amending a statute or the Manual.  That role should be left for Congress and the Executive Branch.

We would be shortsighted in not allowing the President and the services to exercise their rulemaking authority within established processes.  I agree with Senior Judge Sullivan that neither this Court nor the courts below ought to exercise supervisory authority when the error is harmless.  Rulemaking by the Executive Branch or Congress allows for flexibility and advance planning and avoids the distortion that takes place through judicial rulemaking.  Once the rules are enacted, they will be subject to judicial review.  We will ensure that servicemembers are not prejudiced by post-trial delays.

Twice previously we have sought to interject ourselves into issues of delay through injudicious rulemaking.  See United

States v. Burton, 21 USCMA 112, 44 CMR 166 (1971); Dunlap v. Convening Authority, 23 USCMA 135, 48 CMR 751 (1974). As to both Burton and Dunlap, we recognized the error and overruled our prior cases. See United States v. Kossman, 38 MJ 258 (CMA 1993); United States v. Banks, 7 MJ 92 (CMA 1979).[2] These later decisions recognize that rules regarding delays should be made by the Executive Branch or Congress, not by this Court or the intermediate appellate courts.

The failure to take action in this case will not frustrate the legislative purpose behind Article 66. In fact, leaving action to the Congress or the President will ensure that the majority achieves its objective. This allows rights and obligations to be protected through the rulemaking process rather than through judicial efforts to amend the Code.

Certainly there should be no unreasonable and unexplained delays. But these rules will be more appropriately adopted by the Legislative or Executive Branch, which are in the best position to decide when and how to chastise staff judge advocates and others in the Executive Branch. Judges should be required immediately to notify the service Clerk of Court or some central authority when a sentence that includes a punitive discharge and one year or more confinement has been imposed.

---

[2] See also United States v. Williams, 55 MJ 302 (2001)(no relief granted because there was no showing of prejudice since there was no representation to entitlement of pay beyond expiration of term of service).

See United States v. Henry, 40 MJ 722, 725 (NMCMR 1994). There can then be an automatic triggering mechanism at 120 days or some other point in time in order to determine whether the convening authority has taken action. The fitness evaluation standards need to be changed: when there are substantial delays, an evaluation of the responsible person or persons should reflect such performance.

If we look to the Executive and Legislative Branches to take action, we will ensure continuity and relative stability in handling delays in post-trial actions. The difficulties associated with court-crafted rules can be seen in the hundreds of published cases and more than a thousand unpublished cases that were decided subsequent to Burton.

For all of the foregoing reasons, I would affirm the court below.

United States v. Tardif, No. 01-0520/CG

SULLIVAN, Senior Judge (dissenting):

I see no reason to reverse and remand this case.  I would affirm.  There was no prejudice to appellant from the post-trial delay in this case, and no appellate relief is otherwise required by law.  See Article 59(a), UCMJ.  The majority today creates a new equity-type supervisory power for the Courts of Criminal Appeals.  This is judicial activism, and I dissent.

This Court granted review on the following question of law:

> WHETHER THE COAST GUARD COURT OF CRIMINAL
> APPEALS ERRED IN CONCLUDING THAT APPELLANT
> HAD NOT BEEN PREJUDICED BY EXCESSIVE POST
> TRIAL DELAY WHERE THE COURT BELOW
> CONCLUDED THAT THE DELAY WAS BOTH
> "UNEXPLAINED AND UNREASONABLE" AND "CASTS
> A SHADOW OF UNFAIRNESS OVER OUR MILITARY
> JUSTICE SYSTEM."

We review a Court of Criminal Appeals decision on prejudice resulting from post-trial delay on a de novo basis.  See United States v. Banks, 7 MJ 92 (CMA 1979).  It is key to this case that both the Government and appellant concede that appellant has not suffered material prejudice from the post-trial delay in this case so as to warrant reversal of his conviction.  See United States v. Hudson, 46 MJ 226 (1997); United States v. Jenkins, 38 MJ 287 (CMA 1983).  The court below and I both agree that the post-trial delay in this case did not legally prejudice appellant as required by our case law for appellate relief.  See United States v. Gray, 22 USCMA 443, 445, 47 CMR 484, 486 (1973);

United States v. Tardif, 01-0520/CG

United States v. Timmons, 22 USCMA 226, 227, 46 CMR 226, 227 (1973).

Appellant, however, argues that this Court's decisions requiring a showing of legal prejudice for reversal do not bind the Court of Criminal Appeals or preclude it from granting a lesser form of sentence relief (confinement reduction) based on a simple showing of unreasonable post-trial delay.  But see United States v. Timmons, supra (holding "post-trial delay, standing alone without prejudicial error in the trial proceedings, will not require relief on otherwise proper findings and sentences").  He cites the "unique" sentence approval powers of the lower appellate court under Article 66(c), UCMJ, as legal authority for such action.  See also United States v. Collazo, 53 MJ 721 (Army Ct.Crim.App. 2000)

Appellant's particular argument in this regard is as follows:

> Appellant does not contend that a "legal error" has been committed such as would warrant dismissing the charges.  Yet, by the lower court's ruling that the post trial delay was "both unexplained and unreasonable" and "casts a shadow of unfairness over our military justice system," his case was quite possibly one in which something less than the entire sentence should have been approved.  The Coast Guard Court, however, by focusing on this court's Article 67(c) standard of review, appears to have overlooked its responsibility under Article 66(c).  While

2

> the court did not explicitly say so, it is apparent from the majority decision that the court viewed itself as powerless to award any relief for post trial delay because Appellant had not established legal prejudice. While adherence to both the letter and the spirit of this court's precedents is laudable, there is nothing in the history of this court which requires a service court to sit on its hands while a practice which compromises the integrity of the military justice system in the eyes of the world is allowed to flourish.

Final Brief at 31 (emphasis added).

I have read carefully the opinions of the Court of Criminal Appeals in this case and conclude that it has not overlooked its responsibility under Article 66(c). In its original opinion, it stated, "Moreover, on the basis of the entire record, we have determined that this sentence should be approved." 55 MJ at 669. The lower court was well aware of its sentence approval power and did not state it was barred from considering simple post-trial delay as one factor among many in determining an appropriate sentence. Absent such a statement, appellant's argument is pure speculation and invites us to overstep our jurisdictional bounds. See United States v. Higbie, 12 USCMA 298, 300, 30 CMR 298, 300 (1961); see also United States v. Christopher, 13 USCMA 231, 236, 32 CMR 231, 236 (1962).

In addition, I disagree with appellant that the sentence approval powers of the Courts of Criminal Appeals should be used

to "combat the recurrent problem of unexplained and inordinate post-trial delay in the review of courts-martial." Final Brief at 10. Article 66, UCMJ, expressly limits the Courts of Criminal Appeals' exercise of this unique sentencing power to matters in the "entire record" before them. This limitation on the sentence approval powers under Article 66, UCMJ, is consistent with the intent of Congress to provide each individual military accused "a specially suited sentence." See United States v. Stene, 7 USCMA 277, 281, 22 CMR 67, 71 (1956). Clearly, its exercise as a judicial tool to remedy unevidenced problems in the military justice system at large is inconsistent with this statutory purpose and "ultra vires." See United States v. Hasting, 461 U.S. 499, 505-07 (1983) (holding that the interests preserved by the doctrine of harmless error cannot be lightly and casually ignored in order to chastise what court viewed as prosecutorial overreaching).

Finally, I am aware that a majority of this Court in the past has quite broadly construed Article 66(c), UCMJ, to provide to a Court of Criminal Appeals an essentially unreviewable "carte blanche to do justice" for a military accused. See United States v. Claxton, 32 MJ 159, 162 (CMA 1991). In Claxton, this Court approved the service appellate court's decision to ignore the law of waiver in order to grant sentencing relief to an accused for an unobjected to evidentiary error occurring during a sentence

hearing.  I did not agree with this movement to create courts of equity, not of law, in our subordinate court system.  United States v. Claxton, supra at 165 (Sullivan, C.J., concurring in part and in the result).  More recently, in United States v. Quiroz, 55 MJ 334, 338-39 (2001), a majority of this Court even went so far as to permit the appellate court below to ignore the law of multiplicity in granting findings relief while vaguely citing the service appellate court's power under Article 66(c), UCMJ.

This aberrant line of decisions should not be extended here to hold that the Courts of Criminal Appeals may also flout the law on post-trial delay in discharging their sentence approval function.  See United States v. Hutchinson, No. 02-5001, __ MJ __ (2002)(holding a Court of Criminal Appeals may not exercise its sentence approval powers to criticize a state court conviction).  Article 66(c), UCMJ, was not intended by Congress as a means for a subordinate court to evade or avoid unpopular legal precedent of this Court.  See United States v. Sills, 56 MJ 239 (2002).  This is neither the letter nor the spirit of Article 66(c), UCMJ, nor is it what the Supreme Court meant by the "power to determine sentence appropriateness."  See Jackson v. Taylor, 353 U.S. 569, 576 (1957) (holding Article 66(c) permits reassessment of sentence by service appellate court after legal error found); see also United States v. Healy, 26 MJ 394, 396 (CMA 1988).  In

5

my view, the service appellate court abuses its discretion when it exercises its sentencing approval power in deliberate derogation of our legal precedent.  See generally United States v. Dukes, 5 MJ 71, 73 (CMA 1978).

    Accordingly, I again dissent and urge this Court to return to the rule of law as enacted by Congress.  See United States v. Quiroz, supra at 345 (Sullivan, J., dissenting); United States v. Waymire, 9 USCMA 252, 255, 26 CMR 32, 35 (1958).  The sentence approval powers given to the service appellate courts are indeed unique, but it is equally clear that Congress did not envision them as a standardless supervisory remedy for judicially perceived inequities in the military justice system.  See United States v. Sothen, 54 MJ 294, 296 (2001); United States v. Christopher, 13 USCMA at 236-37, 32 CMR at 236-237.  Moreover, when the Courts of Criminal Appeals exercise their unique sentence approval powers under Article 66(c), UCMJ, they should do so based on the entire record, and consistent with constitutional and statutory law, as well as our decisional precedent.[*]  See United States v. Higbie, 12 USCMA at 300, 30 CMR

_____

[*]  The majority remands this case for reconsideration on the basis that the appellate court below misunderstood its broad authority under Article 66(c), UCMJ.  It then proceeds to redefine the law of post-trial delay and hold that unreasonable prejudicial post-trial delay may be remedied by confinement credit.  I disagree with the first holding and conclude that, under the majority's remand, the second holding is clearly dicta which should not be decided in this case.

6

United States v. Tardif, 01-0520/CG

at 300; United States v. Claxton, supra at 165 (Sullivan, C.J.,

concurring in part and in the result).


    In sum, I believe the Court below was right when it stated in

its original opinion in this case:


>  [W]e are to be guided by the opinions of
>  the Court of Appeals for the Armed Forces
>  on this subject [post-trial delay by the
>  convening authority].  Applying the
>  standard that Court has set forth, we
>  find that prejudice directly attributable
>  to the delay in this case has not been
>  established, and thus no relief is
>  warranted.

55 MJ at 669.  The court below was following the law.  The

majority now is making new law, a process best left to Congress.

7