**UNITED STATES, Appellee,**

v.

**Craig O. SHELY, Seaman Recruit, U.S. Navy, Appellant.**

No. 43,573.
NMCM 82–0469.

U.S. Court of Military Appeals.

Nov. 7, 1983.

For Appellant: *Commander Matthew J. Wheeler,* JAGC, USNR, and *Lieutenant Kathleen P. McTighe,* JAGC, USNR (on brief); *Lieutenant Commander I.D. Warden, Jr.,* JAGC, USN.

For Appellee: *Commander W.J. Hughes,* JAGC, USN, and *Lieutenant Michael P. Cogswell,* JAGC, USNR (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

This appeal is another of a disturbing number of cases involving intolerable delay in the post-trial processing of courts-martial which have arisen since this Court, in *United States v. Banks,* 7 M.J. 92 (C.M.A. 1979), withdrew from the "inflexible application" (*id.* at 93) of the presumption of prejudice from such delay theretofore invoked under certain circumstances, *see Dunlap v. Convening Authority,* 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974). Instead, the Court determined that "applications for relief because of delay of final action by the convening authority will be tested for prejudice." 7 M.J. at 94. Because of the indefensible period of delay at the convening and supervisory [1] authority levels which here prejudiced appellant, the conviction must be set aside and the charges [2] dismissed.

1. Where the convening authority lacks general court-martial authority, *see* Article 65(b), Uniform Code of Military Justice, 10 U.S.C. § 865(b), the supervisory authority must take his action within the same timely period as must a convening authority who does have such power. *United States v. Brewer,* 1 M.J. 233, 234 (C.M.A.1975).

2. In accordance with his pleas, appellant was convicted by a military judge sitting alone as a special court-martial of four unauthorized absences—for periods of approximately four

■ Appellant was tried and convicted on October 14, 1980, and the convening authority approved the trial results on December 8, 1980. In his post-trial review dated April 15, 1981—six months after the end of the trial—the staff judge advocate to the supervisory authority, however, recommended that the sentence be set aside and a rehearing thereon ordered. This was because prosecution exhibit 2—which had been offered by trial counsel in rebuttal to defense evidence in extenuation and mitigation and which, therefore, presumably contained matters adverse to appellant—was missing from the record. Even at that late date the staff judge advocate had not been able to identify the nature of that exhibit and to ascertain whether it had been admitted into evidence. In his *Goode*[3] response, dated April 27, defense counsel objected to the "unreasonabl[e]" delay in the staff judge advocate's preparing his review and asked for "corrective action" of some unspecified nature. The staff judge advocate rebutted this on May 15, noting that appellant had been released from confinement after 29 days and that "[t]here ... [was] no claim or showing of specific prejudice to any substantial right of the accused" from the delay. He explained, "The delay of approximately 4 months [after the CA's action] can be attributed to the greatly increased number of reviews and inadequate force personnel to expedite processing of reviews within the Force Judge Advocate's Office." The supervisory authority, following his staff judge advocate's recommendation, finally acted on May 30—228 days after trial—approving the findings but ordering a rehearing on the sentence.

Exactly what occurred in appellant's case over the next four months is not apparent from the record. However, on October 9, 1981, the military judge who presided at the court-martial executed a certificate of correction so that the record of trial would reflect that prosecution exhibit 2 had not been admitted into evidence because it was identical to defense exhibit F, which had been admitted earlier.

On December 1, 1981, the staff judge advocate signed a supplement to his original review in which he advised the supervisory authority that prosecution exhibit 2 had not been admitted and that a copy of it, marked "Offered but not admitted into evidence," was then included in the record. Accordingly, after observing that "[i]t is therefore unnecessary to conduct a rehearing," he recommended that the supervisory authority withdraw his action of six months earlier and approve the findings and sentence without modification. The supervisory authority did just that on December 28, 1981. The delay between the end of appellant's court-martial and the final action of the supervisory authority on this 38-page record of trial totaled 439 days.

In my separate opinion in *United States v. Johnson,* 10 M.J. 213, 218 (C.M.A.1981), I observed:

> The very difficulty in demonstrating that prejudice to an accused has resulted from delays in completing the action provides a temptation for a convening authority to lapse into dilatory habits in completing his action. Thus, the demise of the *Dunlap* presumption may produce a return to the intolerable delays that persuaded the Court to adopt the presumption in the first place. Indeed, to help prevent such an occurrence, the Court should be vigilant in finding prejudice wherever lengthy post-trial delay in review by a convening authority is involved.

In the case at bar, appellant has amply demonstrated such prejudice.

In his unrebutted affidavit filed in this Court, appellant detailed his living and working conditions in the nearly one year after he was released from confinement

---

months, less than one month, five days, and about two months—and of failing to obey a lawful order, in violation of Articles 86 and 92, U.C.M.J., 10 U.S.C. §§ 886 and 892, respectively. He was sentenced to a bad-conduct discharge and confinement at hard labor for 35 days. The convening and supervisory authorities approved these results and the Court of Military Review affirmed.

3. *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

and, for some unexplained reason, attached to the disciplinary barracks—which normally houses people awaiting court-martial or other disciplinary proceedings—instead of to the transient personnel barracks—which normally houses those in a post-trial status awaiting transfer. In this affidavit, appellant avers that throughout this period of nearly one year, he "had finished ... [his] post-trial confinement and there were no disciplinary proceedings pending against ... [him]" and that "no explanation was given to ... [him] regarding why ... [he] was assigned to the Disciplinary Barracks for this extended period of time." He reveals that the conditions under which he lived and worked differed substantially from those to which he was entitled—including less satisfactory duty assignments; thrice-daily muster requirements, close supervision, and loss of his identification card during the work-day; denial of leave during the first six months because he was in a disciplinary status; and denial of promotion and the corresponding pay increase because of his disciplinary status. Ultimately, appellant was sent home on appellate leave to await completion of his appeal and execution of his punitive discharge.

■ The post-trial processing of this case is marked by administrative bungling and indifference. The delay occasioned thereby will not be tolerated if there is *any* indication that appellant was prejudiced as a result. *See United States v. Gentry,* 14 M.J. 209 (C.M.A.1982); *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982). Such prejudice is amply apparent here, and, accordingly, the Government must fully bear the consequences.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed. The findings and sentence are set aside and the charges are dismissed.[4]

Judge FLETCHER concurs.

4. In light of our disposition of this case, we need not consider a second issue on which we granted review. 14 M.J. 232 (1982).

* Despite the passage of nearly a year since appellant described his post-release conditions in

COOK, Judge (concurring):

I agree completely with the majority opinion. I write separately only to explain why I consider this case different from *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982), where I dissented. After Clevidence completed his post-trial confinement, he was immediately placed on appellate leave. His assertion of prejudice flowing from the lengthy delay in the post-trial processing of his case was his inability to find "good" employment in the civilian community. He alleged that prospective employers were unwilling to hire him for fear that he might be recalled to active duty. Frankly, I am dubious, as a general proposition, that appellate confirmation of a bad-conduct discharge improves a servicemember's chances of obtaining "good" employment. With only Clevidence's speculative contentions to rely on, I was unwilling to depart from the rule that

delay in post-trial processing would be error only if there was some other error in the trial proceedings necessitating a rehearing, and that because of the delay, the accused would be prejudiced in presenting his case at the rehearing.

14 M.J. at 20.

In the instant case, there is nothing speculative about the prejudice suffered * by appellant; indeed it was meted out directly at the hands of the Navy. These circumstances justify a different result. *Cf. United States v. Gentry,* 14 M.J. 209 (C.M.A. 1982). Considering the relatively minor nature of the offenses of which appellant was convicted, the adjudged punishment already fulfilled by appellant, and the extensive deprivations unnecessarily inflicted on appellant, the only remedy we can fashion to compensate appellant is that indicated in the majority opinion.

an affidavit to this Court, the Government has neither rebutted nor denied a single aspect of appellant's rendition.