IN THE CASE OF


UNITED STATES, Appellee

v.

Anthony L. JONES, Lance Corporal
U.S. Marine Corps, Appellant

No. 02-0060

Crim. App. No.  200100066
United States Court of Appeals for the Armed Forces

Argued December 7, 2004

Decided May 10, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
EFFRON, BAKER, and ERDMANN, JJ., joined.  CRAWFORD, J., filed a
dissenting opinion.

Counsel

For Appellant:  Captain Richard A. Viczorek, USMC (argued);
Commander George F. Reilly, JAGC, USN, and Major Eric P.
Gifford, USMC (on brief).

For Appellee:  Major Robert M. Fuhrer, USMCR (argued);
Commander Charles N. Purnell, JAGC, USN, and Captain Glen R.
Hines Jr., USMC (on brief); Colonel R. M. Favors, USMC, Colonel
William K. Lietzau, USMC, Commander R. P. Taishoff, JAGC, USN,
and Lieutenant Christopher J. Hajec, JAGC, USNR.

Military Judge:  J. F. Havranek

**This opinion is subject to editorial correction before final publication**.

Chief Judge GIERKE delivered the opinion of the Court.

The lower court found excessive post-trial delay, but declined to grant relief because it determined that the delay did not prejudice Appellant and that the sentence was appropriate. Like the lower court, we conclude that the unexplained post-trial delay in this case was unreasonably lengthy. The key issue before this Court is whether the unreasonable post-trial delay prejudiced Appellant as a matter of law. Appellant's own declaration and declarations from three officials of a potential employer indicate, with various degrees of certainty, that he would have been considered for employment or actually hired if he had possessed a discharge certificate (DD-214). We hold that these unrebutted declarations were sufficient to demonstrate prejudice.

## I. BACKGROUND

On January 11, 2000, in accordance with Appellant's pleas, a special court-martial found him guilty of two specifications of unauthorized absence and two specifications of missing movement by design, in violation of Articles 86 and 87 of the Uniform Code of Military Justice (UCMJ).[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 45 days, and reduction to pay grade E-1. As the lower court

---

[1] 10 U.S.C. §§ 886, 887 (2000).

noted, Appellant's "uncontested special court-martial lasted just 55 minutes."[2]

"Even though the verbatim record of trial is only 37 pages in length, it took over 6 months, until [July 17,] 2000, for the record to be transcribed, authenticated, and served on Appellant's trial defense counsel."[3] Another sixty-six days would pass before the staff judge advocate issued the Rule for Courts-Martial 1106 recommendation. That document was not served on the defense counsel until October 2, 2000 -- 265 days after the trial ended. Finally, on October 27, 2000 -- 290 days after trial -- the convening authority acted. In accordance with the pretrial agreement, the convening authority suspended all confinement in excess of thirty days for a period of twelve months from the date of the convening authority's action.

But the convening authority's action did not end the delay in this case. The Navy-Marine Corps Court did not receive the record of trial until January 9, 2001 -- seventy-four days after the convening authority acted and two days short of a year from the date of trial.

In October 2001, the Navy-Marine Corps Court affirmed the findings and sentence in an unpublished opinion, rejecting

---

[2] United States v. Jones, No. NMCM 200100066, 2003 CCA LEXIS 155, at *3, 2003 WL 21785470, at *1 (N-M. Ct. Crim. App. June 19, 2003).
[3] Id.

Appellant's argument that he was entitled to relief based on the unreasonably lengthy post-trial delay.  This Court later set aside that decision and remanded the case for further consideration of the sentence's appropriateness in light of United States v. Tardif,[4] which was decided after the lower court's initial review of Appellant's case.  In June 2003, the Navy-Marine Corps Court again affirmed the findings and sentence.[5]  This Court then granted Appellant's petition for review[6] and later specified an additional issue concerning whether the lower court erred by concluding that Appellant's showing of prejudice arising from the post-trial delay was "too speculative."[7]

Before the lower court, Appellant submitted a declaration concerning his post-trial activities, as well as three declarations from officials of a potential employer.  In May and June of 2000, Appellant completed a course of study at a truck driver's school and received a truck driver's license.  In July 2000 -- a bit more than four months after he went on appellate leave and approximately six months after his court-martial --

---

[4] United States v. Jones, 57 M.J. 443 (C.A.A.F. 2002) (citing United States v. Tardif, 57 M.J. 219 (C.A.A.F. 2002)).
[5] United States v. Jones, No. NMCM 200100066, 2003 CCA LEXIS 155, 2003 WL 21785470 (N-M. Ct. Crim. App. June 19, 2003).
[6] United States v. Jones, 59 M.J. 222 (C.A.A.F. 2003).
[7] United States v. Jones, 60 M.J. 287 (C.A.A.F. 2004).

Appellant applied for a job with U.S. Xpress Enterprises, a national trucking company.

A declaration from Mr. Joseph Fuller, the director of U.S. Xpress's Driver Services Department, stated that Appellant had applied for a position as a driver. Mr. Fuller explained that under company policy, job applicants who were in the military must provide "a form DD-214, Proof of Discharge Certificate. Since Anthony Jones was unable to provide such documentation, we were unable to complete a check of his employment background in order to process his application. As such, he was not considered for employment." Mr. Fuller was aware of Appellant's court-martial conviction and pending bad-conduct discharge. Nevertheless, "Under our current company policy, Anthony Jones would not have been excluded from consideration for employment based solely upon the adverse discharge from the armed forces. Instead, our company would evaluate the underlying conduct that led to the offenses." Mr. Fuller observed that "given the uniquely military offenses committed by Anthony Jones and, assuming that he was otherwise qualified, he would have been seriously considered for employment during the summer of 2000 had he possessed a DD-214." Appellant also presented a declaration from Ms. Afton Yazzie, an Assistant Instructor with U.S. Xpress. She stated that Appellant participated in a company orientation program in July 2000. He was invited "to

attend the orientation based upon his initial application and qualifications. Persons attending the company orientation are generally hired upon successful completion as they are pre-screened to ensure that they have the proper licensing and background requirements." But Appellant's "employment application had been flagged as he was missing required proof of past employment." Ms. Yazzie's declaration stated that "[d]ue solely to his inability to meet this requirement, he was told that he could not complete orientation and a decision on his employment with U.S. Xpress was deferred until he could provide a DD-214." She also explained that Appellant applied again later in 2000 and twice in 2001, but each time "the decision was made that his lack of a DD-214 prevented his employment." The final declaration was from Ms. Brenda Cole, an orientation instructor with U.S. Xpress. Ms. Cole's declaration was the most certain of the three. She specifically stated, "I can personally attest that had Anthony Jones provided a DD-214 in July 2000, he would have been hired as a truck driver with U.S. Xpress at the conclusion of the orientation program." She also recounted that as Appellant "was leaving the orientation, one of our recruiters told him to reapply for employment once he received his DD-214 and he would be hired."

A position with U.S. Xpress would have produced an average salary of $3,500 to $4,000 per month, in addition to substantial

employee benefits.  When Appellant did not obtain a position with U.S. Xpress, he obtained alternative employment as a delivery truck driver earning about $7 to $10 per hour working part-time or through temporary agencies.

The Government presented no information to rebut any of these declarations.

The Navy-Marine Corps Court found that the post-trial delay in this case was "excessive."[8]  As that court explained, "Each of the various processing steps took weeks or months to accomplish [what] we would reasonably expect a command to accomplish in days or weeks."[9]  The lower court also emphasized its displeasure with "the 11 weeks it took to mail the record" to that court.[10]

Given this finding of unexplained excessive post-trial delay, the central legal issue then became whether the delay had prejudiced Appellant.  The Navy-Marine Corps Court held that it did not.  The court concluded that "the degree of prejudice is simply too speculative to convince us that Appellant is entitled to relief."[11]  The court reasoned that "[v]irtually all persons whose court-martial sentence includes a bad-conduct discharge who do not waive appellate review of their case live for a lengthy period in civilian life without possession of the DD[-]

---

[8] Jones, 2003 CCA LEXIS 155 at *7, 2003 WL 21785470 at *3.
[9] Id. at *18, 2003 WL 21785470 at *6.
[10] Id., 2003 WL 21785470 at *6.
[11] Id. at *23, 2003 WL 21785470 at *10.

7

214."[12] While stating that "this is a close case," the court reiterated that "Appellant has not demonstrated that he is entitled to relief, either under Article 59(a), UCMJ, or Article 66(c), UCMJ."[13]

## II. DISCUSSION

Appellant's trial lasted fifty-five minutes and resulted in a thirty-seven-page record of trial. Yet 363 days elapsed before the record was docketed with the Navy-Marine Corps Court. The Navy-Marine Corps Court found that this unexplained delay was excessive. We similarly conclude that the unexplained post-trial delay was facially unreasonable. This conclusion serves as a trigger for a more extensive due process review.

United States v. Tardif[14] discussed the Courts of Criminal Appeals' authority to address unreasonable and unexplained post-trial delay under their Article 66 authority to ensure an "appropriate sentence." Toohey v. United States[15] discussed an appellant's constitutional due process right to a speedy post-trial review, a right separate and distinct from the "sentence appropriateness" review under Article 66. Our review of this case deals solely with the Toohey constitutional due process review.

---

[12] Id. at *23-*24, 2003 WL 21785470 at *8 (quoting United States v. Dupree, 37 M.J. 1089, 1092 (N.M.C.M.R. 1993)).
[13] Id. at *24, 2003 WL 21785470 at *8.
[14] 57 M.J. 219 (C.A.A.F. 2002).
[15] 60 M.J. 100 (C.A.A.F. 2004).

Determining whether post-trial delay violates an appellant's due process rights turns on four factors: (1) the length of the delay; (2) the reasons for the delay, (3) the appellant's assertion of the right to a timely appeal; and (4) prejudice to the appellant.[16] As we have explained, the "length of delay" factor serves two functions: "First, the length of delay is to some extent a triggering mechanism, and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, there is no necessity for inquiry into the other factors that go into the balance."[17] Second, "if the constitutional inquiry has been triggered, the length of delay is itself balanced with the other factors and may, in extreme circumstances, give rise to a strong presumption of evidentiary prejudice affecting the fourth Barker factor."[18] Because we conclude that the post-trial delay in this case was facially unreasonable, we will analyze the remaining three factors.

The Government has offered no justification for the appellate delay in this case, and the record fails to disclose any.

---

[16] Id. at 102 (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).
[17] Id. (quoting United States v. Smith, 94 F.3d 204, 208-09 (6th Cir. 1996) (internal quotation marks omitted)); Barker, 407 U.S. at 530 (1972).
[18] 60 M.J. at 102 (quoting Smith, 94 F.3d at 209) (interal quotation marks omitted); Doggett v. United States, 505 U.S. 647, 657 (1992).

The record also reflects that Appellant complained about the delay in post-trial processing. The lower court found that, "on two or more occasions," Appellant "contacted a junior member at his unit, explained the problems that he was having in obtaining employment because of the delay in obtaining his DD-214, and made clear his desire to move the process along more rapidly."[19] The lower court also noted that the record "contains a series of letters and faxes documenting Appellant's subsequent efforts to engage the Marine Corps, his U.S. Senator, and his appellate defense counsel in expediting the processing of his case."[20]

In our view, the most critical issue in this case is whether the excessive post-trial delay prejudiced Appellant.[21] Unlike the lower court, we conclude that it did.

Whether Appellant has established prejudice is a legal question subject to de novo review.[22] We have often recognized interference with post-military employment opportunities as a

---

[19] Jones, 2003 CCA LEXIS 155, at *21, 2003 WL 21785470, at *7.

[20] Id.

[21] Of course, in the exercise of their unique Article 66(c) sentence appropriateness powers, the Courts of Criminal Appeals retain the authority to grant sentence relief for unexplained and unreasonable post-trial delay even absent prejudice. See United States v. Tardif, 57 M.J. 219, 224 (C.A.A.F. 2002).

[22] See United States v. Diaz, 45 M.J. 494, 496 (C.A.A.F. 1997) ("We hold that a de-novo-review standard to assess prejudice [is] required by Article 59(a), UCMJ, 10 USC § 859(a) . . . ."); Tardif, 57 M.J. at 228 (Sullivan, S.J., dissenting) ("We review a Court of Criminal Appeals decision on prejudice resulting from post-trial delay on a de novo basis.").

form of prejudice that warrants relief for unreasonable post-trial delay.[23] The record indicates that as a result of the unreasonable post-trial delay, Appellant has suffered this form of prejudice.

Ms. Cole's declaration affirmatively stated that, based on her personal knowledge, Appellant would have been hired by U.S. Xpress if only he had a DD-214. If that were the only document that Appellant had submitted, it would seem unquestionable that he has established that the unreasonable post-trial delay prejudiced him. But, in addition to his own declaration, Appellant submitted two more declarations from U.S. Xpress officials. One of these, executed by the director of the Driver Services Department, stated that had Appellant had his DD-214, he would merely "have been seriously considered for employment."

The Government argues that Appellant was not prejudiced by the excessive delay in this case. At oral argument, the Government observed that the commercial driver's license that Appellant presented in support of his prejudice claim was issued in October 2000, several months after U.S. Xpress considered him for a position. The Government also observes that Appellant applied for a position with U.S. Xpress approximately six months

---

[23] See, e.g., United States v. Sutton, 15 M.J. 235 (C.M.A. 1983); United States v. Gentry, 14 M.J. 209 (C.M.A. 1982) (summary disposition); United States v. Clevidence, 14 M.J. 17 (C.M.A. 1982).

after his court-martial ended. Even if the post-trial review had been handled with utmost speed, the case would certainly have remained on appellate review at that point and Appellant would not have had his DD-214.

We conclude, however, that Appellant has demonstrated on-going prejudice. His declaration -- which the Government has never rebutted -- indicated that U.S. Xpress officials told Appellant that he should contact them again once he received his DD-214. Ms. Yazzie's declaration indicated that Appellant reapplied to U.S. Xpress in the fall of 2000, January 2001, and May 2001. Ms. Yazzie also indicated that Appellant "was, and still is to my knowledge, invited to apply again once he obtains a DD-214." So Appellant's ability to have his employment application considered by U.S. Xpress was prejudiced after he obtained the commercial driver's license attached to his declaration[24] and after he likely would have received a DD-214 if only his post-trial review had been completed within a reasonable time.

No speculation is necessary to conclude that the unrebutted declarations establish that the unreasonable post-trial delay prejudiced Appellant. Nor do the declarations conflict on this

---

[24] We also note that Appellant may have previously received another commercial driver's license issued before he attended the U.S. Xpress orientation.

12

point: all four agree that Appellant would have been considered for a position with U.S. Xpress if he had his DD-214. The issue in this case is whether Appellant was prejudiced by the unreasonably lengthy delay, not whether he had a guaranteed offer of employment. In America, there are employers willing to give a second chance to ex-convicts, whether civilian or military, who have paid their debt to society. In this case, the delay prejudiced Appellant's opportunity for a second chance. We hold that such interference with the opportunity to be considered for employment constitutes prejudice for purposes of the fourth due process factor listed above.

Despite the four unrebutted declarations Appellant has submitted to demonstrate prejudice, the dissent engages in unsupported supposition to reject their import. The simple answer to the dissent's speculation is that the Government had an opportunity to rebut the declarations but did not do so. Three of the four declarations at issue were executed by officials of U.S. Xpress, who have no apparent connection to either party in this case. If, as the dissent supposes, U.S. Xpress would not have offered Appellant a position if its hiring officials were aware of the extent of his unauthorized absences, then the Government could have obtained and submitted to the lower court evidence demonstrating that point. The Government did not. Rather, the Government provided no counterevidence to

13

the lower court either before or after that court attached the four declarations to the record.  It is, therefore, appropriate to accept the content of the unrebutted declarations, rather than guessing as to what the declarants would have said if they hypothetically had access to the information that the dissent discusses.  This is consistent with our well-established approach to supplementing the factual record with affidavits while the case is on appeal:  "if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts."[25]  This is such a case.  By considering these unrebutted declarations, which were already attached to the record by order of the lower court, we are not engaging in fact-finding.  Rather, we are applying the law to unrebutted facts contained within the record, which is a standard role of an appellate court.[26]

We also disagree with the dissent's suggestion that in lieu of presenting a DD-214, Appellant could have satisfied his potential employer by providing an affidavit from his defense

---

[25] United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997).
[26] See generally 1 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 2.18 (3d ed. 1999).

14

counsel explaining his status or a copy of his record of trial. Mr. Fuller's declaration indicates that it was the lack of the form itself –- and not the absence of information from that form –- that disqualified Appellant as a prospective employee. Some employers' insistence that veterans applying for jobs present a DD-214 is understandable. They may be reluctant to devote time and money to train a prospective employee without documentation demonstrating that the individual is no longer on active duty. But regardless of whether Appellant's potential employer should have required a DD-214 as a condition of employment, it appears that the potential employer did. The unreasonable post-trial delay in this case prevented Appellant from satisfying that requirement.

We therefore conclude that Appellant was prejudiced by the facially unreasonable post-trial delay. Balancing the four factors, we hold that the post-trial delay violated Appellant's due process rights. The same evidence that supports the due process test's prejudice factor also demonstrates prejudice for purposes of Article 59(a), UCMJ.[27] Accordingly, Appellant is entitled to relief.

### III. REMEDY

Because this case involves a finding of legal error accompanied by Article 59(a) prejudice, we may order a remedy

---

[27] 10 U.S.C. § 859 (2000).

ourselves rather than remanding the case for that purpose. We consider ordering relief ourselves to be particularly appropriate to bring a close to the overly prolonged post-trial proceedings in this case. Formulating such a remedy is an exercise of authority under Article 59(a) to eliminate material prejudice to Appellant's due process rights; it is entirely distinct from the Court of Criminal Appeals' Article 66(c) sentence appropriateness powers.

In Tardif, we considered whether a court that finds unexplained and unreasonable post-trial delay can grant relief "short of dismissal of the charges."[28] We noted that Dunlap v. Convening Authority[29] adopted a universal remedy for unreasonable post-trial delay: dismissal of the charges and specifications. But in Tardif, we also recognized criticisms of "the draconian remedy required by Dunlap and its progeny."[30] We cited with approval the pre-Dunlap rule that "denial of the right to speedy trial resulted in dismissal of the charges only if reversible trial errors occurred and it was impossible to cure those errors at a rehearing because of the excessive post-trial delay."[31]

---

[28] Tardif, 57 M.J. at 224. We cite Tardif only for its discussion of the appropriate remedy for unreasonable post-trial delay. Id. at 224-25. The bases of our ruling are the Fifth Amendment's Due Process Clause and Article 59(a).
[29] 23 C.M.A. 135, 48 C.M.R. 751 (1974).
[30] See 57 M.J. at 224.
[31] Id. (citing United States v. Timmons, 22 C.M.A. 226, 227, 46 C.M.R. 226, 227 (1973)).

In Tardif, we noted that "appellate courts are not limited to either tolerating the intolerable or giving an appellant a windfall."[32] Rather, in cases involving unreasonable post-trial delay, courts should "tailor an appropriate remedy, if any is warranted, to the circumstances of the case."[33]

In this case, an appropriate remedy is to disapprove the bad-conduct discharge. Appellant pleaded guilty, and nothing that has occurred since trial has suggested that the findings are not accurate. Setting aside the findings would be a windfall for Appellant.

Setting aside the bad-conduct discharge is a remedy more proportionate to the prejudice that the unreasonable post-trial delay has caused. The post-trial delay has had an adverse effect on Appellant's ability to find employment. Removing the bad-conduct discharge's adverse effect on Appellant's employment opportunities may help to restore him to the position he would have been in had the post-trial review been accomplished with reasonable speed.

## IV. DECISION

The portion of the United States Navy-Marine Corps Court of Criminal Appeals' decision affirming the bad-conduct discharge is reversed. The bad-conduct discharge is set aside. The

---

[32] Id. at 225.
[33] Id.

remainder of the Navy-Marine Corps Court of Criminal Appeals'
decision, which affirmed the findings and confinement for forty-
five days (as partially suspended by the convening authority)
and reduction to pay-grade E-1, is affirmed.

CRAWFORD, Judge (dissenting):

The majority converts the dicta in United States v. Shely, 16 M.J. 431, 433 (C.M.A. 1983), to a holding in this case.  Cf. United States v. Williams, 55 M.J. 302, 305 (C.A.A.F. 2001). But see United States v. Hudson, 46 M.J. 226, 227 (C.A.A.F. 1997)("The legal standard applicable to such delay is demonstration by appellant of some real harm or legal prejudice as a result of the delay.")(citing United States v. Jenkins, 38 M.J. 287 (C.M.A. 1993)); Shely, 16 M.J. 431; Jenkins, 38 M.J. at 288 ("An appellant seeking such relief must demonstrate some real harm or legal prejudice flowing from that delay.") (citing Shely).  We are moving farther and farther away from the mainstream judicial standard of requiring a showing of actual prejudice to a substantial right of the accused.  Speculative prejudice appears to be sufficient for the majority to grant relief.  Accordingly, I respectfully dissent.

In concluding that Appellant has suffered prejudice, the majority disregards not only our precedent requiring a showing of actual prejudice, United States v. Jenkins, but also common sense.  None of the affiants had full knowledge of Appellant's military record when they executed their affidavits.  Nor do those affidavits -- read separately or together -- raise more

than a mere inference that Appellant would have been employed but for the absence of a DD Form 214.[1]

There are three carefully crafted affidavits in this case from: Ms. Brenda Cole (an orientation instructor), Mr. Joseph Fuller (director, Driver Services Department), and Ms. Afton Yazzie (an assistant orientation instructor). No affiant claims to have had hiring authority and only Mr. Fuller acknowledges Appellant's pending bad-conduct discharge. Ms. Cole, who claims no connection to the hiring process, sagely swears "that had Anthony Jones provided a DD [Form] 214 in July 2000, he would have been hired as a truck driver with U.S. Xpress at the conclusion of the orientation program." (Emphasis added.) Ms. Yazzie -- also unconnected to the hiring decision and claiming no source of knowledge other than Appellant -- avers, in various ways, that the absence of a DD Form 214 prevented a hiring decision in Appellant's case. Mr. Fuller, whose job title implies hiring authority, avers only that "given the uniquely military offenses committed by Anthony Jones and, assuming that he was otherwise qualified, he would have been seriously considered for employment during the summer of 2000 had he possessed a DD [Form] 214." (Emphasis added.)

---

[1] See Dep't of Defense Instruction 1336.1, Certificate of Release or Discharge from Active Duty, DD Form 214/5 Series (Jan. 6, 1989, incorporating through Change 3, Feb. 28, 2003).

The common ground shared by these affidavits is not an unqualified statement that Appellant would have been hired as a truck driver had he possessed a DD Form 214. What these affidavits share is a carefully woven series of exceptions, exclusions, and restrictions wide enough through which to drive a truck. Regarding in particular the statement of Mr. Fuller -- the one affiant who even implies having hiring authority – one need look no further than the plain words of the affidavit to discern its true character. The phrases "Anthony Jones would not have been excluded from consideration for employment based solely upon the adverse discharge" and "assuming that he was otherwise qualified, he would have been seriously considered for employment" were likely crafted less to suggest the legal prejudice required by this Court, and more to negate any inference of factual prejudice that might potentially be alleged by Appellant in a civil court.

There is simply no indication in any of these documents that any of these individuals was aware of Appellant's repeated absences from work, his service record, or his financial difficulties. Far from suggesting that the Government "interfered" with Appellant's employment opportunities, everything we are asked to consider compels a conclusion that Appellant concealed his absences, service record, and financial difficulties to secure even the shrewdly worded affidavits he

offers this Court.  In that regard, Mr. Fuller's reference to Appellant's "uniquely military offenses" sheds welcome light on the characterization Appellant may have lent his past, absent documentation to the contrary.  Mr. Fuller noted that Appellant was "unable to provide such documentation . . . [as to] his employment background in order to process his application." Since Appellant's military record would contain all of his absences -- not just the absences to which he pleaded guilty -- it is not difficult to understand why Appellant failed to disclose his personnel records, or his record of trial, or seek an alternative to the DD Form 214.

Although the majority accurately quotes Mr. Fuller's affidavit in the background section of the lead opinion, I cannot agree with the majority's later, implicit, factual determination that Mr. Fuller's qualifying phrase, "assuming that he was otherwise qualified" is entitled to no weight in evaluating whether Appellant "would have been seriously considered for employment."  Not surprisingly, the factual finding of prejudice collapses when you consider the statement, "assuming he was otherwise qualified," and Mr. Fuller's guarded inclusion of that qualifying phrase compellingly invites the conclusion of no error.

The majority cannot engage in factual findings.  As we recently explained, "[i]n Ginn, we announced . . . six

4

principles to be applied by the courts of criminal appeals in disposing of post-trial, collateral, affidavit-based claims, such as ineffective assistance of counsel. . . ." United States v. Singleton, 60 M.J. 409, 410 (C.A.A.F. 2005). This explanation correctly limits the scope of Ginn to the "courts of criminal appeals," and, offers no support to the proposition that this Court may exercise fact-finding power when examining these post-trial affidavits. When "applying the law to unrebutted facts" "already attached to the record by order of the lower court," __ M.J. (14), I prefer first, to consider authorities pertinent to criminal proceedings,[2] second, to distinguish the "record of trial"[3] from the appellate record, and third, to ensure that fact is distinguished from opinion. In this latter regard, when post-trial affidavits contain statements riddled with exceptions and qualifications, I do not question the Government's decision not to rebut them -- such statements speak for themselves. What I believe we cannot do is depart from Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867 (2000), to "fill in the gaps" in those affidavits by use of selective quotation or otherwise. If there is fact-finding to be done, we must, as a matter of law, leave that to

---

[2] See, e.g., 2 Steven Alan Childress & Martha S. Davis, Federal Standards of Review ch. 7 (3d ed. 1999) (discussing criminal appeals principles).

[3] See Rules for Courts-Martial 1103(b)(2).

the lower courts.  To the extent that I have propounded conclusions or scenarios inconsistent with those offered by the majority, I have done so only to emphasize that the plain, unredacted words of the affidavits, including the artfully placed qualifications and exceptions, are logically suggestive of factual conclusions other than those accepted by the majority as "unrebutted facts."  As such, they comprise, at best, grounds for a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

At the very least, if there is a factual issue, this case should be remanded to the court of criminal appeals, which has the power to analyze affidavits and if, as the majority indicates, further evidence is needed, such evidence could be gathered by the parties and submitted to a court that has fact-finding authority.

The DD Form 214 is a one-page document that would show Appellant's punitive discharge, his schooling, his time in service, etc., as well as his "bad time."  The record clearly shows that Appellant's record is anything but stellar as to being present for work.  Appellant was charged with six specifications of being absent from his place of work without proper authority during the following periods of time:

April 16-20, 1999 (Friday-Tuesday);

May 5-11, 1999 (Wednesday-Tuesday);

June 15, 1999 (Tuesday);

July 29-30, 1999 (Thursday-Friday);

September 14-15, 1999 (Tuesday-Wednesday); and

September 23-27, 1999 (Thursday-Monday).

In addition, Appellant intentionally missed the overseas movements of his battalion on the USS Peleliu on April 19 and May 7, 1999. Pursuant to an offer to plead guilty, the Government withdrew four of the six specifications alleging Appellant's absence from his place of duty. Furthermore, the record demonstrates that Appellant had exhibited poor financial management by having written a number of bad checks.

Rather than the bare-bones DD Form 214, Appellant was in possession of the record of trial, which would have provided the background for these offenses and his military record. There is no indication that Appellant sought the assistance of defense counsel for an affidavit explaining his status, sought assistance from the convening authority, or gave the potential employer a copy of his record of trial, which contained his service records from which the DD Form 214 is completed. It does not take much common sense to explain why Appellant did not implement any of these steps to disclose fully and accurately his military record to U.S. Xpress. Does anyone reasonably believe that the hiring manager for U.S. Xpress would look

7

favorably upon an employment/military record such as Appellant's?

Common sense compels me to conclude that an individual absent from work as much as Appellant would not be a truck driver with this firm.  That same common sense should tell this Court that an employer seeking a dependable and financially responsible employee would not look favorably upon Appellant's military record, with or without a DD Form 214.  If the employer had full knowledge of Appellant's military record -- the disclosure of which was under Appellant's control -- and was still willing to aver that Appellant would have been hired but for the lack of a DD Form 214, then I would agree that Appellant had met his burden of demonstrating actual prejudice.  However, that is clearly not the case here.  Any "prejudice" was manufactured by Appellant's own inaction in failing to give his prospective employer all the information Appellant possessed. Appellant has failed to meet his burden to demonstrate that the hiring authority at U.S. Xpress, with full knowledge of Appellant's military record, would have hired him but for the lack of a DD Form 214.  Thus, I agree with the court below that Appellant's claim of prejudice is too speculative and that he has "not demonstrated the necessary prejudice to entitle him to relief for the unreasonable and unexplained post-trial delay . . . in the processing of his record of trial."  United States v.

8

Jones, No. NMCM 200100066, 2003 CCA LEXIS 155, at \*2, 2003 WL 21785470, at 1 (N-M. Ct. Crim. App. June 19, 2003).

"This Court has long recognized" the right to a speedy post-trial review of the findings and sentence at a court-martial. Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 37 (C.A.A.F. 2003). We also recognize the "constitutional right to a timely review guaranteed . . . under the Due Process Clause." Id. at 38. The Supreme Court has not faced the question of whether the United States Constitution guarantees a speedy criminal appeal, but the federal courts have held that there is such a right. However, absent a showing of actual prejudice, they have not granted relief. See, e.g., Elock v. Henderson, 28 F.3d 276, 279 (2d Cir. 1994)(finding no violation of due process in an eight-year delay between conviction and appeal because there was no actual prejudice); Heiser v. Ryan, 15 F.3d 299, 303-04 (3d Cir. 1994)(refusing to grant relief due to failure to show prejudice after a thirteen-year delay between conviction and appeal); United States v. Mohawk, 20 F.3d 1480, 1485-88 (9th Cir. 1994)(finding no prejudice in a ten-year delay). In Jenkins, we held that an appellant "seeking . . . relief (from a post-trial delay) must demonstrate some real harm or legal prejudice flowing from that delay." 38 M.J. at 288. In support of this proposition, the Court, in a unanimous per curiam decision, cited Shely, 16 M.J. 431. The burden rests on

9

Appellant to show prejudice. United States v. Hudson, 46 M.J. at 227. Appellant cannot spoil the evidence by withholding information from a potential employer and still claim prejudice.

A servicemember normally does not receive a DD Form 214 until he or she has exhausted his or her appellate remedies. Thus, most of the appellants before this Court do not yet have a DD Form 214, and would have no reason to expect to have one before their appeals are complete. If we permit relief on the ground that this appellant did not have a DD Form 214, the same rationale will apply to hundreds of cases on appellate review where there has been an imposition of a punitive separation. At the very least, given the critical nature of the information known to Appellant and contained in the record of trial, one would expect that a DuBay hearing would be a prerequisite to relief, at which Appellant would be required to demonstrate that, in light of all pertinent information, he would have been hired but for the absence of a DD Form 214.

Thus, I respectfully dissent. Appellant has not met his burden to show actual prejudice and has failed to take reasonable action to resolve his own problems. Further, a finding of prejudice would open the door to similarly weak and speculative claims from many appellants before this Court.