CRAWFORD, Judge
(dissenting):
The majority converts the dicta in United States v. Shely, 16 M.J. 431, 433 (C.M.A.1983), to a holding in this case. Cf. United States v. Williams, 55 M.J. 302, 305 (C.A.A.F.2001). But see United States v. Hudson, 46 M.J. 226, 227 (C.A.A.F.1997)(“The legal standard applicable to such delay is demonstration by appellant of some real harm or legal prejudice as a result of the delay.”) (citing United States v. Jenkins, 38 M.J. 287 (C.M.A.1993)); Shely, 16 M.J. 431; Jenkins, 38 M.J. at 288 (“An appellant seeking such relief must demonstrate some real harm or legal prejudice flowing from that *87 delay.”) (citing Shely). We are moving farther and farther away from the mainstream judicial standard of requiring a showing of actual prejudice to a substantial right of the accused. Speculative prejudice appears to be sufficient for the majority to grant relief. Accordingly, I respectfully dissent.
In concluding that Appellant has suffered prejudice, the majority disregards not only our precedent requiring a showing of actual prejudice, United States v. Jenkins, but also common sense. None of the affiants had full knowledge of Appellant’s military record when they executed their affidavits. Nor do those affidavits — read separately or together — raise more than a mere inference that Appellant would have been employed but for the absence of a DD Form 214.[1]
There are three carefully crafted affidavits in this case from: Ms. Brenda Cole (an orientation instructor), Mr. Joseph Fuller (director, Driver Services Department), and Ms. Afton Yazzie (an assistant orientation instructor). No affiant claims to have had hiring authority and only Mr. Fuller acknowledges Appellant’s pending bad-conduct discharge. Ms. Cole, who claims no connection to the hiring process, sagely swears “that had Anthony Jones provided a DD [Form] 214 in July 2000, he would have been hired as a truck driver with U.S. Xpress at the conclusion of the orientation program.” (Emphasis added.) Ms. Yazzie — also unconnected to the hiring decision and claiming no source of knowledge other than Appellant— avers, in various ways, that the absence of a DD Form 214 prevented a hiring decision in Appellant’s case. Mr. Fuller, whose job title implies hiring authority, avers only that “given the uniquely military offenses committed by Anthony Jones and, assuming that he was otherwise qualified, he would have been seriously considered for employment during the summer of 2000 had he possessed a DD [Form] 214.” (Emphasis added.)
The common ground shared by these affidavits is not an unqualified statement that Appellant would have been hired as a truck driver had he possessed a DD Form 214. What these affidavits share is a carefully woven series of exceptions, exclusions, and restrictions wide enough through which to drive a truck. Regarding in particular the statement of Mr. Fuller — the one affiant who even implies having hiring authority — one need look no further than the plain words of the affidavit to discern its true character. The phrases “Anthony Jones would not have been excluded from consideration for employment based solely upon the adverse discharge” and “assuming that he was otherwise qualified, he would have been seriously considered for employment” were likely crafted less to suggest the legal prejudice required by this Court, and more to negate any inference of factual prejudice that might potentially be alleged by Appellant in a civil court.
There is simply no indication in any of these documents that any of these individuals was aware of Appellant’s repeated absences from work, his service record, or his financial difficulties. Far from suggesting that the Government “interfered” with Appellant’s employment opportunities, everything we are asked to consider compels a conclusion that Appellant concealed his absences, service record, and financial difficulties to secure even the shrewdly worded affidavits he offers this Court. In that regard, Mr. Fuller’s reference to Appellant’s “uniquely military offenses” sheds welcome light on the characterization Appellant may have lent his past, absent documentation to the contrary. Mr. Fuller noted that Appellant was “unable to provide such documentation ... [as to] his employment background in order to process his application.” Since Appellant’s military reeord would contain all of his absences — not just the absences to which he pleaded guilty — it is not difficult to understand why Appellant failed to disclose his personnel records, or his record of trial, or seek an alternative to the DD Form 214.
Although the majority accurately quotes Mr. Fuller’s affidavit in the background section of the lead opinion, I cannot agree with the majority’s later, implicit, factual determination that Mr. Fuller’s qualifying phrase, *88 “assuming that he was otherwise qualified” is entitled to no weight in evaluating whether Appellant “would have been seriously considered for employment.” Not surprisingly, the factual finding of prejudice collapses when you consider the statement, assuming he was otherwise qualified, and Mr. Fuller’s guarded inclusion of that qualifying phrase compellingly invites the conclusion of no error.
The majority cannot engage in factual findings. As we recently explained, “[i]n Ginn, we announced ... six principles to be applied by the courts of criminal appeals in disposing of post-trial, collateral, affidavit-based claims, such as ineffective assistance of counsel... United States v. Singleton, 60 M.J. 409, 410 (C.A.A.F.2005). This explanation correctly limits the scope of Ginn to the “courts of criminal appeals,” and, offers no support to the proposition that this Court may exercise fact-finding power when examining these post-trial affidavits. When “applying the law to unrebutted facts” “already attached to the record by order of the lower court,” 61 M.J. at 85, I prefer first, to consider authorities pertinent to criminal proceedings,[2] second, to distinguish the “record of trial”[3] from the appellate record, and third, to ensure that fact is distinguished from opinion. In this latter regard, when post-trial affidavits contain statements riddled with exceptions and qualifications, I do not question the Government’s decision not to rebut them — such statements speak for themselves. What I believe we cannot do is depart from Article 67, Uniform Code of Military Justice, 10 U.S.C. § 867 (2000), to “fill in the gaps” in those affidavits by use of selective quotation or otherwise. If there is fact-finding to be done, we must, as a matter of law, leave that to the lower courts. To the extent that I have propounded conclusions or scenarios inconsistent with those offered by the majority, I have done so only to emphasize that the plain, unredacted words of the affidavits, including the artfully placed qualifications and exceptions, are logically suggestive of factual conclusions other than those accepted by the majority as “unrebutted facts.” As such, they comprise, at best, grounds for a hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).
At the very least, if there is a factual issue, this ease should be remanded to the court of criminal appeals, which has the power to analyze affidavits and if, as the majority indicates, further evidence is needed, such evidence could be gathered by the parties and submitted to a court that has fact-finding authority.
The DD Form 214 is a one-page document that would show Appellant’s punitive discharge, his schooling, his time in service, etc., as well as his “bad time.” The record clearly shows that Appellant’s record is anything but stellar as to being present for work. Appellant was charged with six specifications of being absent from his place of work without proper authority during the following periods of time:
April 16-20,1999 (Friday-Tuesday);
May 5-11,1999 (Wednesday-Tuesday);
June 15,1999 (Tuesday);
July 29-30,1999 (Thursday-Friday);
September 14-15, 1999 (Tuesday-Wednesday); and
September 23-27, 1999 (Thursday-Monday).
In addition, Appellant intentionally missed the overseas movements of his battalion on the USS Peleliu on April 19 and May 7,1999. Pursuant to an offer to plead guilty, the Government withdrew four of the six specifications alleging Appellant’s absence from his place of duty. Furthermore, the record demonstrates that Appellant had exhibited poor financial management by having written a number of bad checks.
Rather than the bare-bones DD Form 214, Appellant was in possession of the record of trial, which would have provided the background for these offenses and his military record. There is no indication that Appellant sought the assistance of defense counsel for an affidavit explaining his status, sought assistance from the convening authority, or *89 gave the potential employer a copy of his record of trial, which contained his service records from which the DD Form 214 is completed. It does not take much common sense to explain why Appellant did not implement any of these steps to disclose fully and accurately his military record to U.S. Xpress. Does anyone reasonably believe that the hiring manager for U.S. Xpress would look favorably upon an employment/military record such as Appellant’s?
Common sense compels me to conclude that an individual absent from work as much as Appellant would not be a truck driver with this firm. That same common sense should tell this Court that an employer seeking a dependable and financially responsible employee would not look favorably upon Appellant’s military record, with or without a DD Form 214. If the employer had full knowledge of Appellant’s military record— the disclosure of which was under Appellant’s control — and was still willing to aver that Appellant would have been hired but for the lack of a DD Form 214, then I would agree that Appellant had met his burden of demonstrating actual prejudice. However, that is clearly not the case here. Any “prejudice” was manufactured by Appellant’s own inaction in failing to give his prospective employer all the information Appellant possessed. Appellant has failed to meet his burden to demonstrate that the hiring authority at U.S. Xpress, with full knowledge of Appellant’s military record, would have hired him but for the lack of a DD Form 214. Thus, I agree with the court below that Appellant’s claim of prejudice is too speculative and that he has “not demonstrated the necessary prejudice to entitle him to relief for the unreasonable and unexplained post-trial delay ... in the processing of his record of trial.” United States v. Jones, No. NMCM 200100066, 2003 CCA LEXIS 155, at *2, 2003 WL 21785470, at *1 (N.M.Ct.Crim. App. June 19, 2003).
“This Court has long recognized” the right to a speedy post-trial review of the findings and sentence at a court-martial. Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 37 (C.A.A.F.2003). We also recognize the “constitutional right to a timely review guaranteed ... under the Due Process Clause.” Id. at 38. The Supreme Court has not faced the question of whether the United States Constitution guarantees a speedy criminal appeal, but the federal courts have held that there is such a right. However, absent a showing of actual prejudice, they have not granted relief. See, e.g., Elcock v. Henderson, 28 F.3d 276, 279 (2d Cir.1994)(finding no violation of due process in an eight-year delay between conviction and appeal because there was no actual prejudice); Heiser v. Ryan, 15 F.3d 299, 303-04 (3d Cir.1994)(refusing to grant relief due to failure to show prejudice after a thirteen-year delay between conviction and appeal); United States v. Mohawk, 20 F.3d 1480, 1485-88 (9th Cir.1994)(finding no prejudice in a ten-year delay). In Jenkins, we held that an appellant “seeking ... relief (from a post-trial delay) must demonstrate some real harm or legal prejudice flowing from that delay.” 38 M.J. at 288. In support of this proposition, the Court, in a unanimous per curiam decision, cited Shely, 16 M.J. 431. The burden rests on Appellant to show prejudice. United States v. Hudson, 46 M.J. at 227. Appellant cannot spoil the evidence by withholding information from a potential employer and still claim prejudice.
A servicemember normally does not receive a DD Form 214 until he or she has exhausted his or her appellate remedies. Thus, most of the appellants before this Court do not yet have a DD Form 214, and would have no reason to expect to have one before their appeals are complete. If we permit relief on the ground that this appellant did not have a DD Form 214, the same rationale will apply to hundreds of cases on appellate review where there has been an imposition of a punitive separation. At the very least, given the critical nature of the information known to Appellant and contained in the record of trial, one would expect that a DuBay hearing would be a prerequisite to relief, at which Appellant would be required to demonstrate that, in light of all pertinent information, he would have been hired but for the absence of a DD Form 214.
*90 Thus, I respectfully dissent. Appellant has not met his burden to show actual prejudice and has failed to take reasonable action to resolve his own problems. Further, a finding of prejudice would open the door to similarly weak and speculative claims from many appellants before this Court.

. See Dep’t of Defense Instruction 1336.1, Certificate of Release or Discharge from Active Duty, DD Form 214/5 Series (Jan. 6, 1989, incorporating through Change 3, Feb. 28, 2003).

. See, e.g., 2 Steven Alan Childress & Martha S. Davis, Federal Standards of Review ch. 7 (3d ed.1999) (discussing criminal appeals principles).

. See Rules for Courts-Martial 1103(b)(2).