UNITED STATES, Appellee

v.

Alejandro V. ARRIAGA, Senior Airman
U.S. Air Force, Appellant

No. 10-0572

Crim. App. No. 37439

United States Court of Appeals for the Armed Forces

Argued February 7, 2011

Decided April 29, 2011

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.  STUCKY, J., filed a
separate opinion, concurring in part and dissenting in part and
in the result, in which RYAN, J., joined.

Counsel


For Appellant:  Captain Andrew J. Unsicker (argued); Colonel
Eric N. Eklund and Lieutenant Colonel Gail E. Crawford (on
brief); and Major Anthony D. Ortiz.

For Appellee:  Gerald R. Bruce, Esq. (argued); Colonel Don M.
Christensen (on brief).

Military Judge:  W. Thomas Cumbie


**This opinion is subject to revision before final publication.**

Judge ERDMANN delivered the opinion of the court.

Senior Airman Alejandro V. Arriaga was convicted at a general court-martial with members of housebreaking, as a lesser included offense of burglary, and one specification of indecent assault.[1]  He was sentenced to a dishonorable discharge, four years of confinement, forfeiture of all pay and allowances, and reduction to E-1.  The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings but found that the sentence was inappropriately severe and approved only a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to E-1.  United States v. Arriaga, No. ACM 37439, 2010 CCA LEXIS 171, at *9, 2010 WL 2265581, at *25-*26, (May 7, 2010).

Before this court Arriaga presents two discrete arguments: his conviction for housebreaking must be set aside as housebreaking is not a lesser included offense of burglary under

---

[1] Arriaga was charged with one specification of aggravated sexual assault, one specification of burglary, three specifications of indecent assault, one specification of assault consummated by a battery, and one specification of attempted rape.  The attempted rape specification and one specification of indecent assault were dismissed prior to trial.  Arriaga was found not guilty of all the remaining specifications, but was found guilty of housebreaking as a lesser included offense of burglary and one specification of indecent assault.

United States v. Arriaga, No. 10-0572/AF

United States v. Jones, 68 M.J. 465 (C.A.A.F. 2010); and, that

he be granted additional confinement credit as relief for being

deprived of his right to timely appellate review.[2]  We hold that

housebreaking is a lesser included offense of burglary.  We

further hold that Arriaga was denied his due process right to

speedy appellate review and therefore reverse the decision of

the United States Air Force Court of Criminal Appeals and remand

the case for further action consistent with this opinion.

---

[2] We granted review of the following issues:

> I.   Whether, in light of this court's recent decision
>      in United States v. Jones, 68 M.J. 465, 468
>      (C.A.A.F. 2010), the Appellant's conviction for
>      housebreaking must be set aside because the
>      military judge issued erroneous and misleading
>      instructions supporting housebreaking as an
>      available lesser-included offense to the original
>      burglary charge.
>
> II.  Whether Appellant was deprived of his right to
>      speedy post-trial review when over 243 days
>      elapsed between the date of sentencing and the
>      date the convening authority took action and
>      whether the Air Force Court of Criminal Appeals
>      erroneously held that any delay was harmless
>      beyond a reasonable doubt despite it approving
>      only two years of Appellant's four-year sentence
>      to confinement.

United States v. Arriaga, 69 M.J. 432, 432-33 (C.A.A.F.
2010) (order granting review).

DISCUSSION

A.   Lesser included offense

Arriaga lived in a duplex and a married couple, JC and DC, lived in the adjoining unit.  Arriaga was friendly with the couple and they would occasionally attend his parties.  On the evening in question JC, along with DC and her friend Holly, were watching football at their home.  Arriaga stopped by and invited the group to go to a bar with him, but they declined and he left.  Later, another friend, Will, arrived and the group began to drink alcoholic beverages.  DC drank to the point where she said she was "buzzing, maybe on the verge of being drunk."[3] Later in the evening the group began to watch a DVD in the living room.  One by one everyone except Will fell asleep in the living room.  At some point Will went outside to call a friend on his cell phone and have a cigarette.  Will's friend did not answer his call so Will went over to talk with Arriaga, who was outside his duplex unit visiting with friends.  Arriaga asked him where the others were and Will told him they were all asleep.  Will's friend then returned his call and Will left Arriaga, returned to DC and JC's front yard, and talked with his friend on his cell phone.

---

[3] DC also testified that she took prescription medication for bipolar disorder, which amplified the alcohol's effects.

DC and JC's apartment had two entrances, a back door with a deadbolt, which was generally locked, and the front door.  Will testified that when he went outside for a smoke and to call his friend the front door was unlocked.  After talking to his friend in the front yard for about fifteen minutes, Will saw a shadow moving inside the house and started to go back inside.  When he found the front door locked, he knocked and was surprised when Arriaga opened the door and rushed out of the house.  Will found DC on the loveseat where she had fallen asleep, beginning to cry.  DC testified that she awoke to find Arriaga inside the house with his hand inside her pants and underneath her underwear, rubbing her vagina and ultimately penetrating her with his fingers.  DC reported the incident to Security Forces the morning following the incident.  DC testified that she and her husband did not have an "open-door policy" with Arriaga and she had not invited nor allowed him in the house that night.

The charges of aggravated sexual assault and burglary arose from this incident.  At trial, without objection, the military judge instructed court members on housebreaking as a lesser included offense of burglary.[4]  As noted, Arriaga was found not guilty of aggravated sexual assault as well as burglary, but guilty of the lesser included offense of housebreaking.

---

[4] The military judge also instructed court members on unlawful entry as a lesser included offense to burglary.

United States v. Arriaga, No. 10-0572/AF

Relying on Jones, Arriaga argues that housebreaking is not a lesser included offense of burglary under the elements test. Arriaga argues that the elements of the two offenses are not the same because the intent required for housebreaking is not as limited as that required for burglary. Arriaga goes on to argue that even if housebreaking is a lesser included offense of burglary, the evidence in this case did not fairly raise the offense of housebreaking. The Government responds that the offense of housebreaking was reasonably raised by the evidence and that under United States v. Alston, 69 M.J. 214 (C.A.A.F. 2010), comparison of the statutory elements as charged in the specification is allowed and that under the language of the specification charged here, housebreaking is a lesser included offense of burglary.

"Whether an offense is a lesser included offense is a question of law we review de novo." United States v. Miller, 67 M.J. 385, 387 (C.A.A.F. 2009) (citations omitted). As there was no objection to the instruction at trial, we review for plain error. United States v. Maynard, 66 M.J. 242, 244 (C.A.A.F. 2008). Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice. Id.

Article 79, UCMJ, states that "[a]n accused may be found guilty of an offense necessarily included in the offense charged

6

or of an attempt to commit either the offense charged or an offense necessarily included therein."  Article 79, UCMJ, 10 U.S.C. § 879 (2006); see also Jones, 68 M.J. at 468.  This court applies the elements test to determine whether one offense is a lesser included offense of another.  Id.  "Under the elements test, one compares the elements of each offense.  If all of the elements of [housebreaking] are also elements of [burglary], then [housebreaking] is [a lesser included offense] of [burglary]."  Id. at 470.  The two offenses need not have "identical statutory language."  Alston, 69 M.J. at 216. "Instead, the meaning of the offenses is ascertained by applying the 'normal principles of statutory construction.'"  Id. (citation omitted).

The elements of burglary are:

>(1)   That the accused unlawfully broke and entered the dwelling house of another;

>(2)   That both the breaking and entering were done in the nighttime; and

>(3)   That the breaking and entering were done with the intent to commit an offense punishable under Article 118 through 128, except Article 123a.

Manual for Courts-Martial, United States pt. IV, para. 55.b. (2008 ed.) (MCM); see also United States v. Thompson, 32 M.J. 65, 66 (C.M.A. 1991).  The elements of housebreaking are:

>(1)   That the accused unlawfully entered a certain building or structure of a certain other person; and

> (2)  That the unlawful entry was made with
> the intent to commit a criminal offense
> therein.

MCM pt. IV, para 56.b.; see also United States v. Davis, 56 M.J. 299, 300 (C.A.A.F. 2002).

The burglary specification in the charge sheet alleged that Arriaga:

> did, at or near Sumter, South Carolina, between on or about 6 October 2007 and on or about 7 October 2007, in the nighttime, unlawfully break and enter the dwelling house of [DC], with the intent to commit an aggravated sexual assault therein.

Regardless of whether one looks strictly to the statutory elements or to the elements as charged, housebreaking is a lesser included offense of burglary.  Comparing the statutory elements, it is impossible to prove a burglary without also proving a housebreaking.  Furthermore, the offense as charged in this case clearly alleges the elements of both offenses.

Nonetheless, Arriaga argues that housebreaking is not a lesser included offense as the second element of housebreaking is broader than the corresponding element in burglary.  He notes that under burglary the intent required is limited to committing one of the offenses listed under Articles 118 through 128 in the UCMJ, excluding Article 123a, while the intent required in housebreaking is not limited to any specific offenses and requires only that there be intent to commit any criminal offense.  Arriaga essentially argues that since an element of

housebreaking can be proven by establishing the intent to commit an offense other than those listed in the third element of burglary, it cannot be a lesser included offense.

The fact that there may be an "alternative means of satisfying an element in a lesser offense does not preclude it from being a lesser-included offense." United States v. McCullough, 348 F.3d 620, 626 (7th Cir. 2004); see also United States v. Alfisi, 308 F.3d 144, 152 n.6 (2d Cir. 2002); Rutledge v. United States, 517 U.S. 292, 300 (1996). Here the "intent" element of burglary was charged as the intent to commit an offense under Article 120, UCMJ. That charging language also satisfies the "intent" element of housebreaking (intent to commit a criminal offense). While in another case it may be possible to prove a housebreaking offense by proving the intent to commit a criminal offense not designated in the third element of burglary, that is not the offense charged in this case. The offense as charged included all of the elements of housebreaking and all of those elements are also elements of burglary. Housebreaking is therefore a lesser included offense of burglary.

Having determined that housebreaking is a lesser included offense of burglary, we turn to Arriaga's argument that the evidence did not raise the offense of housebreaking and the military judge erred in instructing on that offense. "A

United States v. Arriaga, No. 10-0572/AF

military judge has a sua sponte duty to instruct the members on lesser included offenses reasonably raised by the evidence." United States v. Upham, 66 M.J. 83, 87 (C.A.A.F. 2008). Having reviewed the entire record, we conclude that the evidence clearly raised the offense of housebreaking and it was not error for the military judge to provide an instruction to the members on that offense.

B.  Post-trial delay

Arriaga next argues that he was prejudiced by the delay between the completion of his trial and the convening authority's action. The Government responds that the delay was neither unreasonable nor prejudicial. The Government goes on to argue that even if there was error, it was harmless beyond a reasonable doubt and in any event, no meaningful relief is available.

Whether an appellant has been deprived of his due process right to a speedy appellate review is a question of law we review de novo. United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F. 2006). To determine this we balance the four Barker/Moreno factors:[5]  "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the

---

[5] The court adopted the factors set forth Barker v. Wingo, 407 U.S. 514, 530 (1972), noting that it is not limited to the Sixth Amendment context, but is also utilized "for reviewing post-trial delay due process claims." Moreno, 63 M.J. at 135.

right to timely review and appeal; and (4) prejudice." Id.
(citations omitted). No single factor is required, but a
facially unreasonable length of delay triggers the full
analysis. Id. at 136.

The post-trial delay arguments raised in this case compel a
brief review of this court's recent appellate delay decisions
before we turn to an analysis of the delay in Arriaga's case.
While the court has addressed appellate delay issues since 1974,[6]
the most recent series of cases commenced in 2003. In Diaz v.
Judge Advocate General of the Navy, 59 M.J. 34, 37-38 (C.A.A.F.
2003), the court held that an accused has a constitutional due
process right to a timely "full and fair review of his findings
and sentence." With the Diaz decision, the court began to
address a resurgence of appellate delay cases.[7]

In Moreno we held that "our confidence that [the existing]
procedural protections would suffice to ensure the speedy post-

---

[6] Appellate delay cases decided by the court from 1974 through
2002 included: Dunlap v. Convening Authority, 23 C.M.A. 135, 48
C.M.R. 751 (1974); United States v. Banks, 7 M.J. 92 (C.M.A.
1979); United States v. Clevidence, 14 M.J. 17 (C.M.A. 1982);
United States v. Dunbar, 31 M.J. 70 (C.M.A. 1990); United States
v. Hock, 31 M.J. 334 (C.M.A. 1990); United States v. Hudson, 46
M.J. 226 (C.A.A.F. 1997); United States v. Williams, 55 M.J. 302
(C.A.A.F. 2001); United States v. Tardif, 57 M.J. 219 (C.A.A.F.
2002).

[7] Toohey v. United States, 60 M.J. 100, 104 (C.A.A.F. 2004);
United States v. Rodriguez, 60 M.J. 239, 256 (C.A.A.F. 2004);
United States v. Jones, 61 M.J. 80, 84-86 (C.A.A.F. 2005);
Moreno, 63 M.J. 129 (C.A.A.F. 2006).

11

United States v. Arriaga, No. 10-0572/AF

trial and appellate rights of servicemembers has been eroded."
63 M.J. at 142. In that case the court prospectively adopted "a
presumption of unreasonable delay that will serve to trigger the
Barker four-factor analysis where the action of the convening
authority is not taken within 120 days of the completion of
trial." Id. The Government, of course, has the opportunity to
rebut the presumption in the second Barker/Moreno factor,
"reasons for the delay." See id. at 142.

Subsequent cases have addressed issues which were not
raised in Moreno. Even in the absence of specific prejudice, a
constitutional due process violation still occurs if, "in
balancing the other three factors, the delay is so egregious
that tolerating it would adversely affect the public's
perception of the fairness and integrity of the military justice
system." United States v. Toohey, 63 M.J. 353, 362 (C.A.A.F.
2006). Relief in such cases is provided unless this court is
convinced that the post-trial delay was harmless beyond a
reasonable doubt. United States v. Allison, 63 M.J. 365, 370
(C.A.A.F. 2006). Furthermore, the court may assume a due
process violation and proceed straight to the harmless beyond a
reasonable doubt analysis. Id. Finally, even in instances
where post-trial delay was not harmless beyond a reasonable
doubt, the court cannot provide relief where "there is no
reasonable, meaningful relief available." United States v.

United States v. Arriaga, No. 10-0572/AF

Rodriguez-Rivera, 63 M.J. 372, 386 (C.A.A.F. 2006).[8]  We now turn

to the Barker/Moreno factors in Arriaga's case.

1.  Length of the delay

Before triggering a full analysis under the Barker/Moreno

factors, the post-trial delay must first be facially

unreasonable.  Moreno, 63 M.J. at 136.  As noted, a delay of 120

days or more between the completion of trial and the convening

authority's action is presumed to be facially unreasonable.  Id.

at 142.

Arriaga's court-martial was completed on August 28, 2008.

It took the court reporter eighty-two days to complete the

record of trial.  It then took trial counsel eighty days to

authenticate the record of trial (162 days after trial).  It

took the military judge twenty-five days to authenticate the

record of trial (187 days after trial).  The convening authority

took his action twenty-six days later, 243 days after trial.

The 243-day period from the conclusion of trial to the convening

authority's action, while not as extreme as some periods of

delay this court has dealt with, is not de minimis.  The delay

is unreasonable on its face and therefore triggers the full

Barker/Moreno analysis.

---

[8] Between April 2005 and September 2006 this court received and
decided a total of fifty-nine appellate due process delay cases
as Moreno trailer cases.  While the court still sees appellate
due process cases, the number and severity has decreased
significantly in recent years.

Before proceeding to the full analysis, however, it is necessary to clarify exactly what triggers the start of the appellate delay clock. In its argument and brief the Government assumed, apparently based on the 120-day presumption in Moreno, that the appellate delay clock did not start on the date the trial concluded, but rather on the 121st day after trial. As a result of this erroneous assumption, the Government based its entire argument on a 123-day delay rather then the actual 243-day delay. As the thrust of the Moreno decision was to encourage compliance with appellants' due process rights to speedy appellate processing, it is disconcerting that the Government now reads the Moreno 120-day period as a "free" period in which no time delay is computed. To ensure that there are no further misunderstandings, for this period of appellate delay, the clock starts to run the day that the trial is concluded and stops when the convening authority completes his action.[9]

---

[9] This case concerned the delay between trial and the convening authority's action. Moreno also addressed delay in the period between the convening authority's action and filing at the appropriate court of criminal appeals as well as the period between filing at the court of criminal appeals and issuance of the decision. 63 M.J. at 142. Needless to say the time periods that establish a presumption of unreasonableness in those circumstances do not establish a "free" period in which no delay is computed.

2.  Reasons for the delay

As noted, the 243-day delay between the completion of trial and the convening authority's action is presumptively unreasonable.  However, the Government may overcome this presumption by providing legitimate reasons for the delay.  The Government argues that it "exercised due diligence" in preparing the record of trial while dealing with "two deployed senior captains, a pregnant trial counsel who reviewed the transcript while on maternity leave, inexperienced remaining captains in the office, a very heavy case load, and this fully-litigated 8-volume record of trial."

We have held that personnel and administrative issues, such as those raised by the Government in this case, are not legitimate reasons justifying otherwise unreasonable post-trial delay.  See, e.g., Moreno, 63 M.J. at 137 ("To allow caseloads to become a factor in determining whether appellate delay is excessive would allow administrative factors to trump the Article 66 and due process rights of appellants." (quoting Diaz, 59 M.J. at 35)); Toohey, 63 M.J. at 360 (noting that timely preparation of the record is a government responsibility).  Since the record provides no legitimate reason for the delay in the convening authority's action, this factor weighs against the Government.

3.  Assertion of the right to a timely review and appeal

This factor requires the court to examine whether Arriaga objected to the delay in any way or otherwise asserted his right to a timely review.  Arriaga did not raise the appellate delay issue until he was at the Court of Criminal Appeals.  However, "[t]he obligation to ensure a timely review and action by the convening authority rests upon the Government and [Arriaga] is not required to complain in order to receive timely convening authority action."  Moreno, 63 M.J. at 138 (citing United States v. Bodkins, 60 M.J. 322, 323-24 (C.A.A.F. 2004)).  While this factor does weigh against Arriaga, it does so only slightly. See id. (stating that the government bears "the primary responsibility for speedy processing").

4.  Prejudice

"'In the case of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay.'"  Id. (quoting Rheuark v. Shaw, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).  Those interests are:  "'(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.'"  Id. at

United States v. Arriaga, No. 10-0572/AF

138-39 (quoting Rheuark, 628 F.2d at 303 n.8).  Arriaga argues that he suffered prejudice because of oppressive incarceration as well as his anxiety and concern.  We address his claims in inverse order.

a.   Anxiety and concern

An appellant must demonstrate a "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." Moreno, 63 M.J. at 140.  Because of his impending sex offender registration, Arriaga argues that the delay resulted in spontaneous anxiety attacks and that "this impending stigma" unreasonably burdened his aspirations to be a firefighter, as well as his ability to fully interact with his son.  The Government responds that Arriaga has failed to connect any anxiety with the delay in this case.

Since the underlying conviction in this case remains in force, Arriaga must still register as a sex offender regardless of the delay.  As a result Arriaga cannot show that the delay caused prejudice in regard to his impending sex offender registration.  See Toohey, 63 M.J. at 361.  Arriaga has therefore failed to demonstrate that he has suffered any particularized anxiety or concern.

17

b.    Oppressive incarceration pending appeal

To prevail on a claim of unreasonable post-trial delay alleging oppressive incarceration, Arriaga must first succeed on a substantive claim in this court or the court below.  Moreno, 63 M.J. at 139 (stating that an appellant must succeed in a substantive claim); Rodriguez, 60 M.J. at 256 (noting that a successful claim can occur in this court or the court below). Sentence appropriateness relief provides an appellant with substantive relief for the purposes of post-trial delay.  See Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2006).

On August 28, 2008, the court-martial sentenced Arriaga to four years of confinement and credited him for 156 days of pretrial confinement.  Arriaga asserts that his initial maximum release date would have been March 25, 2012.[10]  In its decision dated May 7, 2010, the Court of Criminal Appeals found that Arriaga's sentence for a conviction of housebreaking was inappropriately severe and approved only a two-year period of confinement.  2010 CCA LEXIS 171, at *25-*26, 2010 WL 2265581, at *9.  As a result of the revised sentence, Arriaga asserts that his maximum release date became March 25, 2010.  Arriaga was released on May 14, 2010, one week after the decision of the Court of Criminal Appeals.  As a result of the reduction in

---

[10] The Government does not dispute the calculations of these dates.

sentence, Arriaga spent fifty-one days in confinement beyond his adjusted maximum release date.  Arriaga argues that had the post-trial processing been completed in a timely manner, the Court of Criminal Appeals would have issued its decision before his revised release date and he would not have spent an additional fifty-one days in prison.

If this case had been processed within the timelines set forth in Moreno, assuming it would take the Court of Criminal Appeals approximately the same period of time to issue their decision as they initially took in this case, the decision would have been issued prior to Arriaga's revised maximum release date.[11]  As a result, Arriaga has suffered specific prejudice in the form of oppressive incarceration as a result of the post-trial delay.

5.  Balancing the Barker/Moreno factors

The unreasonable length of the delay, the lack of legitimate reasons advanced by the Government for the delay, and the specific prejudice suffered by Arriaga as a result of oppressive incarceration all weigh against the Government. Arriaga's failure to assert his right to timely post-trial review weighs against him, but only slightly.  Therefore, our balancing of the four Barker/Moreno factors leads us to conclude

---

[11] The Court of Criminal Appeals issued its decision well within the eighteen-month period established in Moreno.  See Moreno, 63 M.J. at 142.

19

United States v. Arriaga, No. 10-0572/AF

that the Government deprived Arriaga of his due process right to speedy review and appeal.

Arriaga has asked for an award of additional confinement credit as a remedy for this violation.  In Moreno, this court provided a nonexclusive list of relief available to reviewing courts depending on the circumstances of individual cases:

> (a) day-for-day reduction in confinement or confinement credit; (b) reduction of forfeitures; (c) set aside of portions of an approved sentence including punitive discharges; (d) set aside of the entire sentence, leaving a sentence of no punishment; (e) a limitation upon the sentence that may be approved by a convening authority following a rehearing; and (f) dismissal of the charges and specifications with or without prejudice.

Id. at 143.  Rather than direct specific relief, we instead remand this case to the Court of Criminal Appeals for it to apply its broad powers to fashion whatever relief, if any, it deems appropriate.  See Toohey, 60 M.J. at 103-04 (recognizing the unique and broad powers of the Courts of Criminal Appeals to fashion appropriate relief).

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is reversed.  The record is returned to the Air Force Judge Advocate General for remand to the Court of Criminal Appeals for action consistent with this opinion.

United States v. Arriaga, No. 10-0572/AF

STUCKY, Judge, with whom RYAN, Judge, joins (concurring in part and dissenting in part and in the result):

I concur in the majority's opinion holding that burglary under Article 129, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 929 (2006), always constitutes the offense of housebreaking under Article 130, UCMJ, 10 U.S.C. § 930 (2006), and therefore that housebreaking is necessarily included in -- and is a lesser included offense of -- the offense of burglary under the elements test of United States v. Jones, 68 M.J. 465 (C.A.A.F. 2010). See United States v. Arriaga, ___ M.J. ___ (3-10) (C.A.A.F. 2011). However, I disagree with the majority's analysis of Issue II -- whether Appellant was deprived of his right to speedy post-trial review -- and would hold that Appellant's due process rights were not violated and would therefore affirm the decision of the United States Air Force Court of Criminal Appeals (CCA).

## I. Background

Appellant was sentenced on August 28, 2008. During sentencing proceedings, Appellant was awarded 156 days of pretrial confinement credit. The first court reporter began transcribing the record of trial on September 26, 2008, and continued to do so until November 17, 2008. The second court reporter began transcribing the rest of the record of trial on November 19, 2008, and finished on December 15, 2008. The

record was then reviewed for accuracy and signed by trial counsel on February 5, 2009, and by defense counsel. On January 30 and February 5, 2009, the record was sent to the military judge; on March 2, 2009, the military judge authenticated the record. The staff judge advocate (SJA) completed his recommendation on March 9, 2009, and presented it to the convening authority. On March 25, 2009, Appellant submitted a clemency petition pursuant to Rules for Court-Martial (R.C.M.) 1105 and 1106, with multiple exhibits, labeled A through BW. On April 23, 2009, the SJA completed an addendum in which he provided the convening authority with advice regarding Appellant's clemency submission. On April 27, 2009, 243 days after Appellant was sentenced, the convening authority took action in Appellant's case.

On May 14, 2009, Appellant's case was docketed with the Air Force court administrative staff and a date was set for hearing before the CCA. While pending before the CCA, defense counsel twice, on October 15, 2009,[1] and on December 3, 2009, requested thirty-day enlargements of time to submit a brief, citing as reasons for the request that the record of trial was 820 pages long, and that there were 11 prosecution exhibits, 60 defense

_____

[1] According to defense counsel's assertion in the document regarding the timeline of the case, October 15 should have been the filing date. However, this document is also stamped with

2

exhibits, and 57 appellate exhibits.  Both of these enlargement motions were granted.

On May 7, 2010, the CCA reduced Appellant's sentence to two years of confinement from four and otherwise affirmed.  On May 10, the Government filed a motion seeking reconsideration, which the CCA denied on May 12.  On May 14, 2010, Appellant was released from confinement.

## II.  Law

The majority is of course correct in holding that a servicemember has a due process right under the Fifth Amendment "to a timely 'full and fair review of his findings and sentence.'"  Arriaga, __ M.J. at __ (11) (citation omitted); accord United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F. 2006); United States v. Bush, 68 M.J. 96, 105 (C.A.A.F. 2009) (Ryan and Stucky, JJ., concurring in the judgment).  In order to determine whether this right has been violated, this Court applies the Supreme Court's Sixth Amendment, Speedy Trial Clause jurisprudence, including, when appropriate, the factor analysis of Barker v. Wingo, 407 U.S. 514 (1972).  See Moreno, 63 M.J. at 135; Bush, 68 M.J. at 105 (Ryan and Stucky, JJ., concurring in the judgment).

---

the date "November 3, 2009," though the significance of this stamp is unexplained.

Here my analysis diverges from that of the majority. Before a reviewing court will apply the Barker factors, "an accused must allege that the [relevant] interval . . . has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." Doggett v. United States, 505 U.S. 647, 651-52 (1992) (noting that, "by definition," an accused cannot complain that he has been denied speedy processing if his case has "in fact, [been] prosecuted . . . with customary promptness"). Whether a delay is "presumptively prejudicial" is necessarily dependent upon the peculiar circumstances of the case. See id.; Barker, 407 U.S. at 530-31; United States v. Thompson, 68 M.J. 308, 315 (C.A.A.F. 2010) (Stucky, J., concurring in the result). A showing of presumptively prejudicial delay does not end the inquiry. It merely "trigger[s] a speedy trial analysis" under the Barker factors. Doggett, 505 U.S. at 651. However, "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause." Reed v. Farley, 512 U.S. 339, 353 (1994); Bush, 68 M.J. at 106-07 (Ryan and Stucky, JJ., concurring in the judgment); accord Taylor v. Roper, 561 F.3d 859, 863 (8th Cir. 2009) (quoting Reed, 512 U.S. at 353). But see United States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010) (stating that prejudice is not required, without addressing the application of Reed).

4

United States v. Arriaga, No. 10-0572/AF

In applying Sixth Amendment Speedy Trial Clause jurisprudence to Fifth Amendment due process claims regarding review of court-martial convictions, the majority has abandoned three fundamental principles underlying that jurisprudence:  (1) that a showing of presumptive prejudice sufficient to trigger Barker analysis be made on the particular circumstances of the case; (2) that the judiciary lacks the "constitutional basis" to engage in "legislative or rulemaking activity" in the context of a right to a speedy trial, see Barker, 407 U.S. at 523; and (3) that the accused must demonstrate prejudice resulting from the delay.

In Moreno, the Court rejected and denounced as "draconian" the Supreme Court's method of requiring a showing of presumptive prejudice -- that the delay in an accused's case was longer than it should have been -- considering the circumstances, in order to trigger full Barker analysis.  Moreno, 63 M.J. at 142 (explaining that "less draconian" measures would, at least for the time being, be sufficient to "deter . . . delays").  In its place, the Moreno court established a "presumption of unreasonable delay" that, like the "draconian" presumptively prejudicial delay, serves both "to trigger the four-part Barker analysis," and also to "satisfy[ ] the first Barker factor." Id.  Compare id., with Doggett, 505 U.S. at 651-52; Barker, 407 U.S. at 530-31.

5

The Moreno court's presumption of unreasonable delay ignores the Supreme Court's requirement that a civilian court must consider allegations of improper delay in the context of the particular circumstances.  In place of that requirement, the Moreno court established a fixed time period for all cases:  the convening authority must act within 120 days after the date of the completion of trial.  63 M.J. at 142.  The majority's view that a presumption of unreasonable delay arises whenever the convening authority has not acted within 120 days of the completion of trial is simply arbitrary.  There is no reason to expect that a fixed period of post-trial delay should trigger heightened review regardless of the length of the trial record or other factors, such as whether the case involves a simple, judge alone plea of guilty to a single specification crime such as wrongful use of cocaine, or, for example, a contested case heard by a panel involving premeditated murder, multiple conspiracies and co-accuseds, and the possibility of the death penalty.  See Barker, 407 U.S. at 530; Thompson, 68 M.J. at 315 (Stucky, J., concurring in the result).

Second, just as the Barker court refused to engage in "legislative or rulemaking activity" in order to remedy the recurring problem of delay in the civilian context, so too the Moreno court should have rejected such an approach in the military context.  Compare Barker, 407 U.S. at 523, with Moreno,

6

63 M.J. at 152 (Crawford, J., dissenting in part and concurring in part and in the result) (noting that the United States Court of Appeals for the Armed Forces "is not a rulemaking body," and that "[t]he Court should leave the rulemaking function where it belongs -- to the executive and legislative branches").

Finally, the majority has also abandoned a third fundamental requirement of the Supreme Court's speedy trial jurisprudence: that, the accused must, in most cases, show prejudice. Bush, 68 M.J. at 105-06 (Ryan and Stucky, JJ., concurring in the judgment) (citing Reed, 512 U.S. at 353). In United States v. Toohey, the majority determined that, despite a complete lack of prejudice, an accused's due process rights can nonetheless be violated on the basis of public perception. 63 M.J. 353, 362 (C.A.A.F. 2006). I continue to believe that "we should cease the practice of basing due process violations on public perception." Bush, 68 M.J. at 105 (Ryan and Stucky, JJ., concurring in the judgment). This is not to say that excessive delay may not be prejudicial, depending, of course, on the facts and circumstances of the case. Normally, though, prejudice will be demonstrated pursuant to Barker. Cf. Reed, 512 U.S. at 353 (citing Barker, 407 U.S. at 530).

### III. Application

Considering the particular facts of this case, including that Appellant was charged with burglary as well as aggravated

sexual assault, assault consummated by a battery, and multiple allegations of indecent assault against multiple victims, that the trial involved testimony provided by seven witnesses, that the trial record was 820 pages long, that trial counsel was on maternity leave for part of the post-trial review, that Appellant submitted a clemency petition for consideration, and that the CCA's decision was delayed by two defense motions based on the complexity of the case, I would find that the 243-day delay between the completion of trial and the convening authority's action does not give rise to a presumption of prejudice triggering full Barker factor analysis. Having failed to make this initial showing, Appellant's rights were not violated.

However, even if Appellant had made a showing of presumptive prejudice sufficient to trigger full Barker analysis, Appellant has failed to demonstrate prejudice in fact. "Our analysis of prejudice" in the context of post-trial delay considers three interests:

> "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired."

Moreno, 63 M.J. at 138-39 (quoting Rheuark v. Shaw, 628 F.2d 297, 303 n.8 (5th Cir. 1980)). Appellant's claim of prejudice

8

is based on the first two interests.  He argues that he was oppressively incarcerated and alleges that he experienced anxiety.

Appellant's claim that he was oppressively incarcerated is speculative at best.  When Appellant was sentenced on August 28, 2008, he was sentenced to four years of confinement.  When arguing his case before the CCA, Appellant raised the same speedy trial claim this Court now addresses regarding the delay in the convening authority's action.  On May 7, 2010, the CCA reduced Appellant's sentence of confinement from four years to two.  According to Appellant's calculations, the CCA's judgment meant that he should have been released on March 25, 2010, forty-four days prior to the CCA's judgment.[2]  On May 14, 2010, just two days after the CCA denied the Government's motion for reconsideration, Appellant was released.  Appellant also claims that he was due 108 days of good conduct time credit on the basis of Air Force and Department of Defense regulations.  As a result, Appellant claims that the combined effect of the CCA's decision and the 243-day delay between completion of trial and action by the convening authority meant that he had been, in total, confined for 159 days longer than he should have been.

---

[2] Because Appellant directs this Court's attention to the CCA's judgment as a cause for granting relief, it is of note that Appellant requested and was granted two enlargements of time of thirty days each to submit his brief at the CCA.

Appellant's claim of prejudice due to oppressive incarceration must fail. To begin with, Appellant's claim that he is due 108 days of good conduct time credit must be rejected. This Court has neither the jurisdiction to review this administrative matter, see United States v. Pena, 64 M.J. 259, 264 (C.A.A.F. 2007); United States v. Spaustat, 57 M.J. 256, 263 (C.A.A.F. 2002), nor, if it had jurisdiction, the ability to find the facts necessary to apply the regulations, see, e.g., Article 67(c), UCMJ, 10 U.S.C. § 867(c) (2006).

Appellant's claim that he should be granted relief as a result of his anxiety is without merit both because he has not alleged that his anxiety was "particularized" and "distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision," Moreno, 63 M.J. at 140, and because the claimed source of Appellant's anxiety is a sex offender registration requirement connected to a conviction not contested before this Court.

Both of these claims are based upon an assumption that, had the initial delay not occurred during the period between the court-martial and the convening authority's action, Appellant's case would have been resolved by the CCA earlier, thereby leading to an earlier release date for Appellant. This assumption is entirely speculative -- there is no basis in fact given for the assertion that the CCA would have issued its

10

opinion earlier had the convening authority's action occurred sooner. The CCA, in granting Appellant such substantial relief, acted with full knowledge of Appellant's claim that his due process rights had been violated. In its opinion, the CCA explained that it had considered Appellant's claim and found any error to be harmless beyond a reasonable doubt.[3] Appellant's argument that he would have been released earlier had the convening authority not taken 243 days to act is directly based on the fact that, slightly over two years into Appellant's four-year sentence, the CCA halved Appellant's period of confinement. But we do not know whether the CCA would have granted Appellant such substantial relief had the convening authority's action occurred earlier, thus depriving him of the post-trial delay claim he brought before the CCA.

In the end, however, what the CCA might have done under different circumstances does not matter in assessing prejudice. In light of the speculative nature of Appellant's claim, the

---

[3] Though the CCA referred to "the additional 123-day delay," the CCA appears to have considered the entire 243-day period in conducting its analysis. Though I disagree with the establishment of a fixed period for presumptively unreasonable delay set forth in Moreno, 63 M.J. at 142 (setting forth a fixed period of 120 days between the completion of the trial and convening authority action), it is in any event improper to do as the Government requested and subtract that 120-day period from the total period of delay when analyzing whether Appellant's right to speedy post-trial review has been violated. United States v. Canchola, 64 M.J. 245, 247 n.2 (C.A.A.F. 2007).

very substantial sentence relief he received from the CCA, and the fact that he was released just two days after the CCA denied the Government's motion for reconsideration, even if Appellant had demonstrated that the delay between sentencing and the convening authority's action was presumptively prejudicial on the basis of the particular facts of his case, the delay did not violate Appellant's right to have his case processed in a timely manner.

I would affirm the decision of the United States Air Force Court of Criminal Appeals.